939 A.2d 296

## PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION

v.

## STATE CIVIL SERVICE COMMISSION (DEPARTMENT OF CORRECTIONS and Dennis N. Jenkins, Sr.),

### Appeal of State Civil Service Commission and Dennis N. Jenkins, Sr.

Supreme Court of Pennsylvania.

Argued May 14, 2007.

Decided Dec. 27, 2007.

Frederick C. Smith, Jr., Esq., PA Civil Service Commission, for State Civil Service Commission.

Harry L. Witte, Esq., Robinson & Geraldo, P.C., Harrisburg, for Dennis N. Jenkins, Sr.

Robin M. Lewis, Esq., Michael J. McGovern, Philadelphia, for Department of Corrections.

Marc Lawrence Gelman, Esq., Thomas W. Jennings, Esq., Jennings Sigmond, P.C., West Chester, for Pennsylvania State Corrections Officers Association.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice BAER.

The State Civil Service Commission (Commission) and Appellant Dennis N. Jenkins, Sr. (Appellant), appeal the order of the Commonwealth Court directing Appellant's employer, the Department of Corrections (DOC), to calculate his seniority, for purposes of furlough and promotion, in accordance with the collective bargaining agreement (CBA), rather than the State Civil Service Act, 71 P.S. §§ 741.1–741.1005 (the Act). The questions we address are whether, with respect to furlough and promotion, the Act and the CBA define and apply seniority differently, and if so, the consequence of any conflict. We conclude that the CBA's definitions of seniority and the loss of seniority conflict with those of the Act. We further conclude that given this conflict, the DOC is required to follow the dictates of the Act.[1] Accordingly, we reverse the order of the Commonwealth Court and reinstate the Commission's adjudication.

While the facts of this case are not in dispute, to understand them in the context of the legal issues presented, it is first necessary to review the applicable provisions of the Act and the CBA. The Act defines the classified service to include all positions in enumerated departments of the state (other than certain managerial-type and unskilled laborers positions not implicated here). *See* Section 3(d)(1)-(15) of the Act, 71 P.S. § 741.3(d)(1)-(15); *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319

---

1. This case concerns only the Act's and CBA's provisions controlling furloughs and promotions. We do not opine regarding any other subjects covered by the CBA, such as shift selection, job bidding, and vacation accrual.

A.2d 174, 184 (1974). Section 807.2 of the Act, 71 P.S. § 741.809, establishes the seniority of all individuals employed within the classified service. In addition to the overarching category of seniority for all employees within the classified service, this Section also establishes two narrower categories within which seniority can accrue or be lost by a civil service employee. They are the more constricted category of "classification series" seniority, which includes all periods of employment in a particular classification series contained within the classified service, and the third and narrowest designation of "class seniority," which is the seniority accrued within a specific job "class" within a "classification series" which, in turn, is within the "classified service." *See* Section 807.2 of the Act, 71 P.S. § 741.809.[2]

Thus, the first and broadest category of seniority is seniority in the classified service. This begins with the date of first civil service employment regardless of the civil service classification series and class, and continues to accrue without regard to how many positions the employee holds in any particular classification series or class. *See* Section 807.2, 71 P.S. § 741.809. The second category of seniority involves classification series and includes all periods of employment in any peculiar classification series, regardless of the number of classes occupied within that series. The final seniority category involves individual classes of employment and includes periods within one particular class, which is, by definition,

**2.** This section provides:
(a) Seniority is established for the classified service, classification series and for each class.
(b) Seniority for the classified service begins with the date of first civil service employment in a civil service class and includes periods of subsequent employment in any civil service class providing such employment has been on a continuous basis. Seniority for a classification series begins with the date of first civil service employment in the class series and includes periods of employment in classes within the series during any period while employed in a continuous basis in the classified service. Seniority in each class begins with the date of first civil service employment in that class and includes periods of subsequent employment in that class during any period while employed on a continuous basis in the classified service.
71 P.S. § 741.809(b).

always within the same classification series and within the classified service.

Additionally, the Act's implementing regulation, 4 Pa.Code § 101.71(a), speaks to the impact upon furloughs and promotions of movement from one classification series to another and from one class to another within a classification series. The regulation specifies that such movements do not impact accrual and retention of seniority so long as the positions held by an employee are all within the classified service in accord with Section 807.2 of the Act, 71 P.S. § 741.809. Under the Act and its regulations, therefore, a promotion, demotion or lateral transfer from one classification series to another or from one class to another does not result in a break-in-service impacting seniority so long as the promotion is within the classified service.

Finally, the Act provides that a movement between positions within the classified service, whether such movement is a promotion, demotion or transfer, is not complete until the expiration of a three-month probationary period, *see* Section 603, 71 P.S. § 741.603. During these three months, the relocating employee has the option to return to his prior position without loss of seniority. Section 804.1(b), 71 P.S. § 741.804a(b).

Unfortunately, the CBA employs different terminology and mandates different consequences for employees moving within the classified service. Implicitly, like the Act, the broadest category of employment is the classified service. However, the CBA's second broadest demarcation is "bargaining units" rather than the Act's "classification series." The difficulty with this distinction, which, in part, lies at the heart of this case, is that the CBA's bargaining units do not encompass every class or classification series under the Act. The third and narrowest demarcation is referred to as a "classification" rather than a "class," which is the term employed by the Act.[3]

3. The CBA, Article 27, § 1(a), (b) provide:

However, this distinction does not seem to present the same problem, as a CBA "classification" and an Act "class" are apparently coterminous.

As noted, the numerous CBA bargaining units within the classified service do not always correlate with the Act's various classification series. Thus, an employee moving under the Act from class to class and therefore moving under the CBA from classification to classification can stay within a classification series for purposes of the Act, but, nevertheless, move from one bargaining unit to another bargaining unit for purposes of the CBA. The importance of this for purposes of the case before us is that the Act uses seniority within the classified service to determine priority among employees for furlough, and the CBA uses bargaining unit seniority for the same purpose; resulting in one of the conflicts between the Act and CBA.

Also, importantly for purposes of this dispute is the Act's and CBA's disparate treatment of a classified service employee accepting a promotion. Under the Act, an employee changing classification series or classes has three months to unilaterally decide to return to his previous position. Section 804.1(b), 71 P.S. § 741.804a(b). If he does so, he maintains all seniority, regardless of the hiatus. *See* Section 807.2, 71 P.S. § 741.809. Conversely, under the CBA, once an employee leaves a bargaining unit, he immediately loses all seniority for both furlough and promotion. CBA, Article 27, § 2. If such employee returns within the three-month window provided by the Act, or, indeed, three days later, it is as if he has been hired into the classified service for the first time. *Id.* Thus, for purposes of furlough and promotion, he is the most junior employee in the bargaining unit and/or classification.

a. Classification seniority standing for the purpose of promotion shall be determined by the length of unbroken (as defined in Section 2) service with the Employer in the employee's current classification.

∗ ∗ ∗

b. Bargaining Unit seniority standing for the purpose of furlough shall be determined by the length of unbroken (as defined in Section 2) service with the Employer in classifications covered by this Agreement.

Finally, before turning to the facts of this case, it is important to recognize that the Pennsylvania Employee Relations Act (PERA), 43 P.S. § 1101.703, contains a provision that any conflict between a statute and collective bargaining agreement must be resolved in favor of the statute:

The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

43 P.S. § 1101.703.[4]

The issue in this case is whether as a matter of law the CBA and the Act are in actual conflict with respect to their determinations of seniority for purposes of furlough and promotion. If so, the question becomes whether the conflict provision in PERA (and the duplicated provision of the CBA) requires that we apply the Act, nullifying the inconsistent provisions of the CBA. Now that we have explained fully the nuanced distinctions between the Act and the CBA and the section of PERA directing that a statute prevails over a collective bargaining agreement in the event of a conflict, we turn to the facts of this case.

Appellant is a member of the Pennsylvania State Corrections Officers Association (the Union), which represents 10,000 members, including all corrections officers employed by the DOC. The Union negotiated the CBA on behalf of Appellant and all other members of his H1 "bargaining unit." [5]

4.  The CBA contains a substantively identical provision:

In the event that any provisions of this Agreement are found to be inconsistent with existing statutes or ordinances, the provisions of such statutes or ordinances shall prevail . . .

Neither party contends that this collective bargaining provision adds anything to or should be interpreted differently from the statutory provision. Accordingly, we will decide this case under Pennsylvania's statutory provision and the caselaw interpreting it, and will not discuss separately this clause from the CBA.

5.  In accord with CBA, we employ CBA terminology. The H1 bargaining unit encompasses sixty-four different "classifications" within the

Appellant began his employment with the DOC on June 25, 1987, as a corrections officer trainee at the State Correctional Institution at Camp Hill. After successfully completing training, on October 1, 1987, he was made a Corrections Officer (CO). After working in this classification for several years he was promoted on March 1, 1992, to Sergeant, a Corrections Officer 2(CO2) classification. In all three classifications, Appellant was a member of the H1 bargaining unit of the Union. Accordingly, pursuant to the CBA, Appellant's bargaining unit seniority began with the first day of employment within the bargaining unit, June 25, 1987. Appellant's classification seniority in the CO2 position began on March 1, 1992. On March 30, 2002, Appellant was promoted to Lieutenant, Corrections Officer 3(CO3), a management level position at the State Correctional Institution at Chester. Promotion to this management level position took Appellant out of the H1 bargaining unit, and, therefore necessarily, out of his classification. Thus, pursuant to the CBA, Appellant lost all seniority for purposes of both furloughs and promotion.

Soon after taking the new position, on April 10, 2002, for personal reasons Appellant requested to return to the CO2 position at Camp Hill. His request was granted, and he was voluntarily transferred and demoted from the position of CO3 at Chester to CO2 at Camp Hill on May 26, 2002, thereby again becoming part of the H1 bargaining unit after what is known as a "break-in-service." Upon Appellant's return to the CO2 position, the DOC followed Article 27, § 2 of the CBA, and assigned him a new seniority start date of May 26, 2002, which, in substance, treated Appellant like a new employee, eliminating the bargaining unit seniority that he had accrued between June 25, 1987 and the day of his transfer out of the H1 bargaining unit, as well as the classification seniority he had accumulated in the CO2 position prior to his promotion. Thus, for both furlough and promotion purposes, he became the most junior employee in the bargaining unit and classification.

DOC, including the positions of corrections officer trainee, corrections officer, and corrections officer 2, but, importantly, not the classification of CO3.

It was Appellant's position that to the extent the CBA defined his promotion to CO3 and return to CO2 as a break-in-service requiring forfeiture of his accrued seniority for purposes of furlough and promotion, it was in conflict with the Act, which allowed him three months to return to his prior position without adverse consequences; and that given this discrepancy, the Act should prevail in accord with PERA, *supra.* Specifically, Appellant believed that under the Act he was entitled to credit for all of his time in the classified service for purposes of furlough, and for all of his time in the CO2 position, both before and after his transfer to the CO3 position, for purposes of promotions.

On May 13, 2002, Appellant filed an appeal with the Commission challenging the DOC's seniority calculation.[6] The case was submitted for decision on stipulations and briefs, and on March 28, 2003, the Commission found in favor of Appellant. Following the adjudication, the Union sought reconsideration and requested permission to intervene, which the Commission denied. The Union and the DOC petitioned the Commonwealth Court for review of the Commission's order. The Commonwealth Court vacated the Commission's March 28, 2003, order, and remanded directing the Commission to afford the Union an opportunity to participate as an indispensable party in the question of how seniority should be calculated for furlough and promotion purposes for members of the H1 bargaining unit.

On remand the Commission held a hearing to address the correct formula for calculating Appellant's seniority. The Union supplemented the record with the testimony of Ed McConnell, its Executive Vice–President, who served on the team that negotiated the CBA. He explained that pursuant to the CBA, seniority is used to determine not only promotions and furlough, but also overtime, vacation bidding, job bidding, shift selection, and vacation accrual for members of the H1

6. Appellant initially sought to challenge the forfeiture of his seniority by filing a grievance with the Union, which refused to accept the grievance, thus prompting him to file a challenge with the Commission.

bargaining unit.[7]   He further contended that bargaining unit seniority bears no relationship to classified service seniority, so that Appellant's classified service seniority rights under the Act were in no way affected by the new starting day for his seniority rights as a member of the H1 bargaining unit and CO2 classification.

In its adjudication, the Commission noted that had Appellant not been promoted to CO3 and returned to CO2, his seniority would have been calculated in the same manner under the Act and the CBA for as long as he remained in the CO2 position.   The essence of the dispute was, according to the Commission, the manner in which the CBA and the Act treated a promotion to a position outside of the H1 bargaining unit and the CO2 classification: under the CBA, such a promotion resulted in the loss of all accrued bargaining unit and classification seniority, whereas the Act protected seniority as long as the promotion was within the classified service and Appellant returned to his CO2 position within three months.   Accordingly, the Commission agreed that there was a conflict between the Act and the CBA, but perceived the conflict to be limited solely to the CBA requirement that its definitions of seniority apply in the context of furlough and promotions, see CBA, Article 27, § 1(a) and (b), because furloughs and promotions are controlled by the Act, while the other subjects are not.

The Commission relied on Section 703 of PERA, 43 P.S. § 1101.703, as well as the conflict provision of the CBA, to direct the DOC to calculate Appellant's seniority for purposes of his right not to be furloughed to include all time he was employed in the classified services, and to calculate Appellant's seniority for purposes of his promotion rights to include all the time he was in the CO2 position, both before and after his transfer to the CO3 position.

The Union appealed to the Commonwealth Court.[8]   Pennsylvania State Corrs. Officers Ass'n v. State Civil Service, 900

---

7.   Again, this decision concerns only promotions and furloughs.

8.   Although the DOC was a party before the Commission, it did not participate in the appeal to the Commonwealth Court.

A.2d 997 (Pa.Cmwlth.2006) (hereinafter, *PSCOA* ). It argued that there was no conflict between the Act and the CBA, and that to the extent there was, the parties were permitted to negotiate terms of promotion and furlough by both caselaw, *PLRB v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975), and the Act, 71 P.S. § 741.802(a) (providing that employees shall be furloughed in order of seniority unless there is a collective bargaining agreement covering the employees to be furloughed, in which case "the terms of such labor agreement relative to a furlough procedure" control); 71 P.S. § 741.601 (stating that where there is a collective bargaining agreement covering promotions, the "terms and procedures of such labor agreement relative to the procedures for promotions" control); 71 P.S. § 741.602 (stating that where a collective bargaining agreement contains "promotion filling procedures." the terms of that agreement control).

The Commonwealth Court examined the CBA's and the Act's respective treatment of a break-in-service, and agreed with the Commission that the CBA deviated from the Act's directive on break-in-service, resulting in an "unmistakable" conflict. *PSCOA,* 900 A.2d at 1002. The Court concluded, however, that the conflict did not require invalidation of the contrary portions of the CBA.[9] Rather, the Court found that the Act did not "explicitly and definitively" prohibit the employer and the Union from agreeing on different definitions of seniority for purposes of furlough and promotion. *Id.* (citing *PLRB v. State College Area School District, supra,* which held that Section 703 of PERA prohibits parties from collectively bargaining a term only where the statute "explicitly and definitively prohibit[s] the public employer from making an agreement as to that specific term."). Accordingly, the Commonwealth Court reversed the Commission, directing that Appellant's seniority be calculated pursuant to the CBA.[10]

9. Although the Commonwealth Court mentioned the conflict provision found within the CBA, Article 33, § 1, it did not discuss it.

10. Judge Smith–Ribner dissented, and Judge Friedman wrote a concurring and dissenting opinion in which she also joined Judge Smith–Ribner's dissent.

■ Appellant and the Commission appeal, arguing that the Commonwealth Court erred by giving controlling effect to the CBA rather than the Act on the issue of the calculation of seniority resulting from Appellant's transfer out of and reentry into the H1 bargaining unit within three months. Our review of the Commission's adjudication is limited to determining whether constitutional rights have been violated, errors of law have been committed, or whether the findings of the agency are supported by substantial evidence. *Pennsylvania Game Comm'n v. State Civil Serv. Comm'n (Toth)*, 561 Pa.19, 747 A.2d 887, 891 (2000) (citing *Bowman v. Department of Env. Res.*, 549 Pa. 65, 700 A.2d 427 (1997)). Because we are called upon to interpret statutory provisions, we are mindful of the rules of statutory construction. The goal of statutory construction is to ascertain the Legislature's intent. 1 Pa.C.S. § 1921(a). To this end, every statute shall be construed, if possible, to give effect to all its provisions. *Id.* When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of following its spirit. 1 Pa.C.S. § 1921(b), *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007). We may presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; does not intend to violate the Constitution of the United States or that of Pennsylvania; and intends the entire statute to be certain and effective. 1 Pa.C.S. § 1922(1)-(3). Further, parts of statutes are to be read in *pari material* and therefore construed together, when they relate to the same persons or things. 1 Pa.C.S. § 1932.

Appellant argues that the nearly fifteen years of seniority he had accrued prior to his promotion out of the H1 bargaining unit was protected by Section 807.2 of the Act, 71 P.S. § 741.809, because he was "employed on a continuous basis in the classified service" during his brief period of employment as a CO3. Further, Appellant argues that his seniority rights were protected by Section 804.1 of the Act, 71 P.S. § 741.804a(b), ensuring continuous employment without penalty for employees who seek and receive promotion, but return

to their original position within three months. The Commission argues that Article 27, § 2, of the CBA is unenforceable by virtue of the conflict provision in the CBA and PERA.

The Union argues that bargaining unit seniority for purposes of the CBA is distinct from seniority in the classified service established by the Act. It appears to be the Union's position that because seniority is defined differently and assigned different names under the CBA and the Act, they are distinct concepts, and, therefore, do not conflict. It argues that nothing in the CBA interferes with or deprives Appellant of his classified service seniority under the Act. Further, relying on *State College*, the Union asserts that the Act does not "explicitly or definitively" prohibit bargaining on alternative definitions and applications of seniority. Additionally, relying on Section 701 of PERA, 43 P.S. § 1101.701, which requires collective bargaining "with respect to wages, hours and other terms and conditions of employment," the Union argues that seniority is an essential term of employment and is therefore a mandatory subject of collective bargaining. More specifically, the Union asserts that the General Assembly has given priority to collective bargaining agreements in matters affected by seniority, such as promotion, and furlough. *See* 71 P.S. §§ 741.601, 741.602, and 741.802(a).

In support of these legal arguments, the Union argues the policy behind its position. It asserts that a decision not to credit seniority for someone who, like Appellant, accepts promotion and subsequently returns to the bargaining unit, affects the entire unit. It contends that every person with less seniority than Appellant in the H1 bargaining unit and the CO2 classification will be prejudiced by Appellant's return, if he is allowed to keep his seniority. Finally, the Union points out that the language governing seniority in this case is not unique to this particular CBA. Rather, there are twenty unions representing 66,000 public employees in the Commonwealth, and the Commonwealth has negotiated seniority with each of these unions. These provisions could become null and void if Appellant prevails here, which, according to the Union,

would jeopardize a multitude of contracts and negate decades of collective bargaining.

■ Addressing the parties' arguments, we consider first whether there is a conflict between the seniority provisions of the CBA and the Act. The Act guarantees continuous employment and restored seniority to an employee who accepts a promotion out of his or her bargaining unit and subsequently chooses to return to his or her prior position. *See* 71 P.S. §§ 741.809, 741.804a(b), 4 Pa Code 101.71(a). Therefore, under the Act, an employee receives classified service seniority credit for all of the time he or she has been employed in the classified service, regardless of how many times he or she may have been promoted or transferred out of a particular classification or class and then returned to it, "providing such employment has been on a continuous basis." 71 P.S. § 741.809(b). Likewise, an employee's seniority for a classification series, which includes all periods of employment in classes within a series, *i.e.,* Appellant's accumulated seniority in the progression from correction officer trainee to CO3, begins with the date of employment in that series and includes all periods of employment within the series as long as the employee remains "employed in a continuous basis in the classified service." *Id.* Finally, class seniority begins with the date of employment in that class and includes all periods of employment in that class as long as the employee is "employed on a continuous basis in the classified service." *Id.* Seniority in one's classification series and class is interrupted when the employee accepts a position in a different classification series or class, but is not forfeited if the employee never leaves the classified service. Therefore, section 807.2 explicitly protects the class seniority of one who accepts a promotion out of the class and later returns to the class, as long as the employee has been employed continuously in the classified service. 71 P.S. § 741.809.[11]

11. The protection of seniority found in Section 807.2, 71 P.S. § 741.809, exemplifies the General Assembly's intention to create a merit based system of employment in the classified service that encourages qualified individuals to seek appointment to positions and thereaf-

The Commission's regulations protect seniority by providing that only a break-in-service terminates the accrual of seniority. Pursuant to this regulation, a promotion or transfer from one classified service position to another is not a break-in-service.[12] Additionally, an employee's previously earned seniority must be restored following a break-in-service provided the employee returns within one year, unless the employee has been demoted or removed for cause. *Id.*

Further, protection of seniority rights is consistent with the Act's protection of employees who seek promotion by ensuring continuous employment even if the employee finds that the promotion is not suitable:

> During the first three months of the probationary period, the employe has the option to return to the position previously held. At any time after the first three months, an employe in probationary status may return to the previous position or classification with written consent of the appointing authorities.

71 P.S. § 741.804a(b). The three-month right of return, exercised at the discretion of the employee, guarantees that the employee can return to his or her previous position. To ensure that the position will remain available should the employee choose to return to it, the Commission's regulations prohibit the employer from filling the position, except on a substitute basis, during the probationary period. *See* 4 Pa.

---

ter become candidates for promotions within the classified service. *See* Section 2, 71 P.S. § 741.2 (articulating the Act's purpose).

**12.** This regulation provides:

(a) *Seniority as used in this part shall be continuous service unless broken by one or more of the following: resignation; retirement; failure to report after notification of appointment through mandatory, preferred or optional reemployment rights; expiration of mandatory, preferred or optional reemployment rights; or failure to report after leave and acceptance of other permanent employment while on leave of absence without pay. If service is broken for one of these reasons, the employe shall lose accrued seniority. If an employee is returned within 1 year after this type of break-in-service, the employee is entitled to credit for seniority purposes the time accrued up to the time the break-in-service occurred, but is not entitled to credit for the time represented by the break-in-service.*

4 Pa.Code § 101.71(a).

Code § 97.38. As a matter of policy, this protection encourages civil service employees to take the risks inherent in seeking promotion and the new responsibilities attached thereto. The General Assembly recognized that employees would less frequently seek promotions to more demanding positions if failure at the new position entailed the risk of termination or of being penalized upon returning to their prior position. Read together, the seniority, break-in-service, and right of return provisions of the Act reflect a legislative intent to encourage employees to seek and accept promotions by enabling them to return to their previous position without being penalized by the loss of seniority. *See* 1 Pa.C.S.1932(a) ("Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things").

As applied to Appellant, it is undisputed that the statutory language of the Act explicitly defines Appellant's classified service seniority to include his employment beginning with his position as a corrections officer trainee in 1987, without regard to how many positions he has held. Therefore, since the CO3 position to which he was temporarily appointed is a classified service position, Appellant's employment was on a continuous basis during his brief promotion to CO3, and Section 807.2 of the Act, 71 P.S. § 741.809, expressly provides that his classified service seniority continued without interruption from October 1, 1987, to the present. Likewise, Appellant's classification series seniority for the correctional officer classification series includes all periods of employment in classes within this series. The result is that all of Appellant's accumulated seniority during his years of employment in the progression from corrections officer trainee to CO3 is included.[13] Finally, the last sentence of Section 807.2 further guarantees that Appellant's seniority in the CO2 class was preserved while he briefly served as a CO3, a period of continuous employment in the classified service. *See* 71 P.S. § 741.809. When he chose

13. In Appellant's case, his classified service seniority and classification series seniority are the same because he was continuously employed within a classification series during the total period of classified service employment.

to return to the position of CO2, therefore, Appellant's class seniority rights were expressly protected by the Act.

Consequently, because the CO3 position to which Appellant was temporarily promoted is within the classified service, notwithstanding that it is not in the H1 bargaining unit by the terms of the CBA, classified service and classification series seniority under the Act includes the entire period of Appellant's employment from October 1, 1987 (when he first became a member of the classified service), to March 31, 2002 (when he was promoted out of the CO2 position), and Appellant's class seniority includes all of the time spent in the CO2 position, both before and after the promotion.[14]

In contrast, the CBA does not protect Appellant's seniority. Under the CBA, classification seniority ("for the purpose of promotion") is the length of unbroken service in the current classification, and bargaining unit seniority ("for the purpose of furlough") is the length of the employee's unbroken service with the employer in all of the sixty-four classifications within the H1 bargaining unit. For purpose of both classification and bargaining unit seniority, a break-in-service occurs "if an employee accepts a transfer out of or is promoted out of [the H1 bargaining] Unit." CBA, Article 27, § 2. The consequence of such a break-in-service is the loss of seniority: "[I]f an employee returns to [the H1] bargaining unit at any time after such transfer and promotion, the employee's seniority in the bargaining unit shall begin anew." *Id.* Applying the CBA to Appellant, because Appellant's time as a CO3 was considered a break-in-service, he lost all of his accrued seniority when he returned to the CO2 position.

14. The Commission states, and the Union does not dispute, that class seniority is used as a factor in determining who is to be considered for promotion, and classified service seniority determines the order in which employees are to be furloughed. *See Jenkins v. Dep't of Corrs.,* Pennsylvania Civ. Serv. Comm'n Adj. No. 22765 at 23 (Mar. 4, 2005) (citing 71 P.S. §§ 741.501, 741.601, which recognize that promotion without examination may be based, in part, on meritorious service and class seniority, and 71 P.S. § 741.802, which specifies that furlough units shall first be divided into quartiles based on performance ratings, and those employees with the least classified service seniority in the lowest quartile are the first to be furloughed).

Comparing the Act's provisions regarding seniority to those of the CBA, the Commonwealth Court found that the conflict was "unmistakable." We agree. When Appellant sought promotion from CO2 to CO3, he had accumulated almost fifteen years of seniority in the corrections officer series. This seniority was statutorily protected by Section 807.2 of the Act, 71 P.S. 741.809. In contrast, the CBA required the forfeiture of this seniority because Appellant had been promoted out of the bargaining unit, thus breaking service, and then returned. By defining a break-in-service to include a promotion out of the H1 bargaining unit, where the Act protects such seniority, the CBA is in conflict with the Act. Further, by permitting an employee to be penalized following an unsuccessful promotion, the CBA discourages members from seeking and accepting promotions. This discouragement is contrary to the stated intent of the Act, which is to encourage appointments and promotions on the basis of merit. *See* 71 P.S. § 741.2.

To demonstrate how the Act and the CBA conflict, consider that for purposes of furlough, the Act would require the employer to take into account all of Appellant's prior service. The CBA, on the other hand, would require consideration only of Appellant's bargaining unit seniority, which began anew upon his reentry into the H1 bargaining unit. By following the CBA and requiring Appellant to forfeit prior service, Appellant would be in danger of being near the top of the furlough list given his new seniority date, a consequence contrary to the Act.

We are not persuaded by the Union's argument that CBA seniority is entirely different from Act seniority and thus not inconsistent with the Act. Both the Act and the CBA purport to dictate how seniority is calculated for promotions and furloughs. The Union's position that the seniority definitions contained in the Act are distinct from those in the CBA would render the Act's definition ineffective, and would strip all seniority rights preserved by the Act. We do not believe the legislature intended the Act's protection of seniority rights to be so easily subverted by definitions in a labor agreement that nullify those protections. *See* 1 Pa.C.S. § 1922(1)-(3); *Penn-*

*sylvania Gaming Control Bd. v. City Council of Philadelphia,* 593 Pa. 241, 928 A.2d 1255 (2007) ("[A] court may presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; does not intend to violate the Constitution of the United States or that of Pennsylvania; and intends the entire statute to be certain and effective.").

▪ We therefore agree with the Commonwealth Court that the seniority provision of the CBA and the Act unmistakably conflict. Having found an unmistakable conflict between the seniority provisions of the Act and the CBA, however, the Commonwealth Court held that the CBA controlled. For the reasons that follow, we disagree.

We have already determined that there is a conflict between the Act and the CBA. Now we must decide the consequence of that conflict. Section 703 of PERA provides that parties to the collective bargaining process "shall not effect or implement a provision in a[CBA] if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes." 43 P.S. § 1101.703. In the event of such a conflict, the statutory language controls. *See State College,* 337 A.2d at 269 ("We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive."). Section 703 of PERA clearly manifests legislative intent to prevent a term of a labor agreement from being in violation of existing law.

In reaching a contrary conclusion, the Commonwealth Court majority relied on our decision in *State College,* 461 Pa. 494, 337 A.2d 262, and its opinion in *Abel v. City of Pittsburgh,* 890 A.2d 1 (Pa.Cmwlth.2005). *State College* addressed the tension between what the legislature has specifically made bargainable and what the legislature has also specifically allowed management to reserve to its unilateral decision making. *State College,* 337 A.2d at 263. This task required interpreting and applying the newly enacted provisions of PERA, specifically, Section 701, which requires good faith negotiation between

public employers and employees regarding "wages, hours and other terms and conditions of employment," Section 702, which reserves for management's unilateral decision making "matters of inherent managerial policy," and Section 703, which, discussed herein, does not permit labor agreements to conflict with statutes. *See* 71 P.S. §§ 741.701, 741.702, and 741.703. The union had filed an unfair labor challenge, alleging that the school district had improperly refused to bargain on several items. The school district responded that these issues were not matters as to which they were mandated to bargain. The Labor Relations Board held that the school district had improperly failed to bargain regarding several items, but that other items were not bargainable. The trial court found that none of the items were subject to collective bargaining, and the Commonwealth Court affirmed.

In resolving the connate tension between Sections 701 and 702, this Court held that if the matter is "one of inherent managerial policy but does affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects" with the public employee's representative pursuant to section 702. *State College,* 337 A.2d at 268.

Turning to the relationship between Section 701 and the limitation imposed by Section 703, the Court noted that with the Public School Code, the legislature had provided a comprehensive system of education. This fact, that the particular subject may be covered by legislation, did not, in the Court's opinion, remove it from collective bargaining under Section 701 if it bears on the question of wages, hours, and conditions of employment. Rather, the Court opined that Section 703 only prevents agreement to and implementation of any term that would be in violation of or inconsistent with any statutory directive. *Id.* at 269. For example, the School Code established a minimum salary scale and provided that school boards may exceed this salary scale. Thus, the Court reasoned, the parties would be prohibited from negotiating a salary scale less than the minimum imposed by the School Code, but they could, as the result of collective bargaining, agree to a higher

salary scale without offending the minimum salary provision of the School Code. *Id.* We therefore held that "items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment." *Id.* at 270.[15]

According to *State College*, therefore, it is not sufficient that the CBA merely violates, is inconsistent with, or conflicts with the Act with regard to wages, hours, and conditions of employment. 43 P.S. § 1101.703. Rather, the Act must contain a statutory directive that explicitly and definitively prohibits the employer from making an agreement as to a specific term or condition of employment as to which the conflict is asserted. *State College*, 337 A.2d at 269–270.

More recently, in *Mifflinburg Area Educ. Ass'n ex rel. Ulrich v. Mifflinburg Area Sch. Dist.*, 555 Pa. 326, 724 A.2d 339 (1999), this Court addressed whether an arbitration award that failed to grant teachers credit for past years of service with respect to their placement on a salary scale, following a break-in-service, could stand in light of a conflicting provision in the Pennsylvania School Code. We concluded that, given the conflict, the award could not stand. *Id.*

The labor agreement included a fifteen step salary schedule, with placement on the schedule dependant on years of service. When several teachers were placed on the salary schedule, the school district declined to give them credit for their years of employment prior to their breaks-in-service, relying on the labor agreement and crediting only their years of service following the breaks-in-service. The union asserted, on the teachers' behalf, that the School Code included its own pay

---

15. Justice Pomeroy, joined by one other Justice, disagreed with this point, noting that Section 703 was quite clear in its mandate that a labor agreement is forbidden to contain a provision the implementation of which would be inconsistent with or in conflict of a statute. Justice Pomeroy was unable to agree that items are excluded under Section 703 only where another statute "explicitly and definitively" prohibits the agreement, opining that there was no reason for the majority to rewrite Section 703 to add this requirement.

schedule based on years of experience within the school district and prohibited a labor agreement from altering the step the employee gained through years of service. *See* 24 P.S. § 11–1142(a). Relying upon Section 1121 of the School Code, 24 P.S. § 11–1121, which provides that all contracts contain a clause stating that none of the provisions of the School Code may be waived by district employees, and Section 703 of PERA, we reinstated the trial court's order vacating the award, ruling that actions taken pursuant to a labor agreement could not violate the School Code. We interpreted the School Code to require that a teacher's past years of service are to be credited upon rehire for purposes of placement on the salary scale:

> The language contained in Section 1142(a) [of the School Code] protects professional school district employees from the patent unfairness of disregarding past years of service with the same school district when the district places a rehired teacher on a salary scale and the teacher is receiving a salary in excess of the state mandated minimum. The mandates of Section 1142 and 1149 express the legislature's intent to protect valuable years of service performed by employees who sustained breaks in service for a variety of reasons.

*Mifflinburg,* 724 A.2d at 343. We concluded that the aggrieved teachers were statutorily protected against losing credit for previous service under the School Code.

In so holding, the *Mifflinburg* Court did not mention, let alone discuss and apply, the *State College* "explicit and definitive" test. Rather, because the School Code provided that the statutory mandates of the School Code could not be waived, and because Section 703 of PERA prevents the parties from implementing collective bargaining agreement provisions that are inconsistent with or conflict with any statutes, the provision in the labor agreement that conflicted with the School Code was invalid. Thus, *Mifflinburg* demonstrates that the prohibition in Section 703 of PERA against a contract provision that violates or is inconsistent with a statutory enactment

has not been rendered a dead letter by *State College* as the Union would have us hold.

· Rather, we hold that Section 807.2 of the Act, 71 P.S. 741.809, is, in fact, a statutory directive that prohibits an employer from bargaining away the seniority rights protected therein. The Act provides specific, detailed requirements governing the calculation of seniority for members of the classified service. *See* 71 P.S. §§ 741.809. This provision, as discussed above, statutorily protects Appellant from forfeiting his seniority under the same factual scenario in which the CBA, Article 27, § 2 would mandate that his seniority be forfeited. Seniority is explicitly defined in the Act with respect to seniority in the classified service, classification series, and within one's class, and does not require forfeiture of seniority under these circumstances. The statutory directive contained in Section 807.2 of the Act, by its terms, "establishes" seniority for all members of the classified service, and provides as well for its protection. 71 P.S. § 741.809.

In those instances where the legislature wants a labor agreement to supersede provisions of the Act, it has explicitly indicated this intent. Specifically, the Act permits labor agreements to supersede the Act in limited situations as indicated in Sections 601, 602, and 802(a). *See* 71 P.S. §§ 741.601, 741.602, and 741.802(a). These sections expressly authorize parties negotiating a labor agreement to bargain over the procedures to follow when implementing promotions and furloughs. They do not, however, authorize the parties to redefine seniority in ways inconsistent with the Act.

Section 601 provides that if there is a labor agreement "covering promotions in the classified service," then "the terms and procedures of such labor agreement relative to the procedures for promotions shall be controlling," rather than the alternate procedure offered in that section. 71 P.S. § 741.601. Section 602 likewise provides that "[i]f a vacant position is to be filled, an appointing authority may request the director to issue an appropriate certification of eligibles unless a labor agreement contains promotion procedures which are inconsistent with this act, in which case the terms of

such labor agreement shall be controlling." 71 P.S. § 741.602. A similar provision allows a CBA to provide the procedural mechanisms for furloughs in Section 802, which provides that "the employee shall be furloughed in the order of seniority unless there is in existence a labor agreement covering employees to be furloughed, in which case the terms of such labor agreement relative to a furlough procedure shall be controlling." 71 P.S. 741.802(a). In these three provisions the General Assembly has expressly permitted the provisions in a labor agreement covering procedures for promotions and furloughs to control instead of those provided by the Act. There is no comparable directive to look to the labor agreement in Section 807.2, 71 P.S. § 741.809.

We do not believe that by deferring to the labor agreement and providing for a procedure in the absence of a relevant agreement specifically with regard to the procedures for promotions and furlough, that the legislature intended to permit labor agreements to trump other relevant statutory directives in contravention of Section 703 of PERA. The legislature has clearly delineated only certain limited areas as to which parties may bargain away statutory procedures and protections. *See* 71 P.S. §§ 741.601, 741.602, 741.802(a). The fact that the General Assembly directed that labor agreements be followed in those specific situations, but did not direct that they be followed in defining seniority in Section 807.2, indicates that the General Assembly did not intend a collective bargaining agreement's definition of seniority to prevail over the contrary terms of the Act. *See* 1 Pa.C.S. § 1924 ("Exceptions expressed in a statute shall be construed to exclude all others); *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 567 Pa. 514, 788 A.2d 955, 962 (2001) ('An exception expressly provided in a statute is a strong indication that the legislature did not intend to exclude unexpressed items.' ").

The Commission properly concluded that these provisions of the Act, by their own terms, authorize collective bargaining over procedures for promotions and furloughs. The CBA's provisions on seniority and break-in-service, however, are not procedural. Rather, the CBA substantively requires forfei-

ture of statutorily protected seniority following a promotion out of and return to the H1 bargaining unit. While labor and management may bargain over whether seniority should be given more or less weight when making furlough or promotional decisions, they may not define what seniority is and when it is forfeited in a way that conflicts with the Act.

We conclude that Article 27, § 2 of the CBA, to the extent it defined a promotion or transfer as a break-in-service, is legally invalid and void as a matter of law. 43 P.S. § 1101.703. Seniority calculations for Appellant must honor the Act's manifest intent that members of the H1 bargaining unit who leave for promotion and then return, without leaving the classified service, must have their seniority calculated in accordance with the Act, 71 P.S. § 741.809. We therefore reinstate the Commission's adjudication directing the DOC to calculate Appellant's classification seniority as a CO2 as including all the time he was employed since his promotion to CO2 on March 1, 1992 through March 30, 2002 and from his return to that classification on May 26, 2002, and further directing the DOC to calculate Appellant's bargaining unit seniority to include all time he was employed in the H1 bargaining unit from June 25, 1987, through March 30, 2002, in addition to the time from his return to that unit on May 26, 2002.

Chief Justice CAPPY, Justice CASTILLE, Justice BALDWIN and Justice FITZGERALD join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, dissenting.

I would affirm based upon the opinion of Judge Leavitt writing for the *en banc* Commonwealth Court majority in the present case. *See Pennsylvania State Corrections Officers Association v. State Civil Service Comm'n,* 900 A.2d 997 (Pa.Cmwlth.2006).

Justice EAKIN, dissenting.

There is a conflict between the treatment of seniority in the CBA and in the statute. The statute is silent about the ability of the parties to negotiate a term different from those in the statute. Does that silence mean the parties can do so, or does it mean the parties are not permitted to do so? In one interpretation, the statute must expressly *authorize* negotiation of a different term; failure to do so precludes any such negotiation. In the other interpretation, the statute must expressly *prohibit* such negotiation in order to be seen as preclusive.

*Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975) provides "[§] 703 prohibits parties from collectively bargaining a term only where the other statute 'explicitly and definitively prohibit[s] the public employer from making an agreement as to that specific term.' " *Pennsylvania State Corrections Officers Association v. State Civil Service Commission*, 900 A.2d 997, 1004 (Pa.Cmwlth.2006) (quoting *State College*, at 270). As *State College* is controlling precedent,[1] the answer must be as found by the Commonwealth Court. There appears little advantage in universally prohibiting contracting parties from freely negotiating terms such as seniority; if both sides choose to adopt a different plan, it should be permitted absent a clear legislative directive to the contrary. As such, I dissent.

---

1. *Mifflinburg Area Education Association v. Mifflinburg Area School District*, 555 Pa. 326, 724 A.2d 339 (1999) does not hold to the contrary.