12 A.3d 346

**DEPARTMENT OF CORRECTIONS and Department Of Public Welfare, Appellees**

v.

**PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2009.

Decided Jan. 20, 2011.

522

524

Stephen J. Holroyd, Philadelphia, Thomas W. Jennings, Jennings Sigmond, P.C., for Pennsylvania State Corrections Officers Association.

Patrick James Harvey, William Karl Kennedy, II, Ballard Spahr Andrews & Ingersoll, L.L.P., Philadelphia, for Dept. of Corrections & Dept. of Public Welfare.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice SAYLOR.

We granted review to consider whether a provision of an interest arbitration award was properly vacated by the Commonwealth Court as being in excess of the arbitration panel's authority. The disputed provision pertains to a requirement that the Commonwealth furnish legal representation to certain public safety employees in any legal proceeding arising from employment-related conduct, including criminal or otherwise intentional or malicious conduct, and that it indemnify such employees against civil judgments resulting from such conduct.

### I. Background

The Commonwealth of Pennsylvania and the Pennsylvania

Corrections Officers Association (the "Union"),[1] were subject to a collective bargaining agreement ("CBA") that expired on June 30, 2004. Article 33, Section 21 of the CBA provided employees with legal representation and indemnification for civil judgments in various types of proceedings brought against them. It provided that the Commonwealth, as employer, must supply liability coverage and a legal defense in civil suits as detailed in, *inter alia,* Chapter 39 of Title 4 of the Pennsylvania Administrative Code. *See* 4 Pa.Code §§ 39.1–39.6 (pertaining to the defense of actions against Commonwealth employees). Pursuant to Chapter 39, the Commonwealth provides employees with counsel in civil cases where the conduct is alleged to have been unintentional. If the conduct is alleged to have been malicious or intentional, the General Counsel retains the discretion to determine whether the employee is to be provided with a defense and indemnification. Under the CBA, the Commonwealth was also authorized to provide an employee with counsel in criminal cases, and if it did not do so, it would be obligated to advance reasonable attorney fees. In the event of a conviction, the fees would be recouped from the employee's retirement account. With an acquittal, the Commonwealth was responsible for all reasonable attorney fees. The amount of reimbursement was subject to adjustment, however, if the employee's defense was successful on some basis other than acquittal.

When the Union and the Commonwealth began negotiating for a new CBA, they could not agree on the new provisions of Article 33, Section 21. They ultimately submitted their dispute to binding arbitration pursuant to Section 805 of the Public Employee Relations Act ("PERA").[2] PERA (also

1. The Union is the bargaining representative for the "H–1 bargaining unit," which consists of approximately 9,500 personnel employed by the Department of Corrections ("DOC") and the Department of Public Welfare ("DPW"). *See generally Pa. State Corr. Officers Ass'n v. State Civil Serv. Comm'n (DOC),* 595 Pa. 548, 554, 939 A.2d 296, 300 (2007). These individuals are involved in the care, custody, and control of inmates at state correctional institutions and patients at state mental hospitals.

2. Act of July 23, 1970, P.L. 563, No. 195 (as amended, 43 P.S. §§ 1101.101–1101.2301).

known as Act 195) requires public employers and their employees to bargain in good faith over "wages, hours, and other terms and conditions of employment[.]" 43 P.S. § 1101.701.[3] Section 805 of the act states that

> where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining[,] and mediation as required in [43 P.S. § 1101.801] has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

43 P.S. § 1101.805.

During the arbitration hearings, the Union expressed dissatisfaction with the way the Commonwealth exercised its discretion. It submitted evidence regarding the lack of reimbursement where certain criminal matters had been dismissed, and referenced two instances where an employee was not reimbursed for civil actions that were settled or dismissed. The Union thus proposed changes to Article 33, Section 21, to require the Commonwealth to provide legal representation for all civil and criminal cases, regardless of whether the underlying conduct was alleged to have been malicious or negligent. The Commonwealth opposed the Union's proposal and offered testimony from the DOC's Chief Counsel that it contradicted the regulations promulgated by the Executive Board of the Commonwealth (the "Executive Board"), which prohibit Commonwealth attorneys from representing employees in criminal matters. *See* 4 Pa.Code § 39.1.[4] The Chief Counsel ex-

---

3. The public employer's duty to bargain collectively is limited by Section 703, which states that the parties may not implement a CBA provision that conflicts with either a statute enacted by the General Assembly or a municipal home rule charter. *See* 43 P.S. § 1101.703. Notably, the CBA is alleged to conflict with administrative regulations, and not a statute or a home rule charter.

4. The Executive Board is a seven-person board comprised of the Governor and six agency heads designated by the Governor. *See* 71 P.S.

plained that this prohibition seeks to avoid a conflict of interest and that it was rare that a Commonwealth employee was not reimbursed for legal expenses. Indeed, according to the Chief Counsel, employees are almost always defended and indemnified in civil cases and the two incidents to the contrary cited by the Union were unique in this regard because of their particular circumstances.

The arbitration panel issued an award in January 2006 (the "Award"), one paragraph of which adopted verbatim the Union's proposed amendatory language for Article 33, Section 21. In particular, Paragraph 18 of the Award provides:

(a) If a bargaining unit member is charged with a criminal action arising from the performance of his/her duties, he/she shall select local counsel in consultation with the Commonwealth. The Commonwealth shall pay for the fees of such counsel to the extent the fees are in line with prevailing rates in the area.

(b) If a bargaining unit member is a defendant in a civil suit arising from the performance of his/her duties, the Commonwealth shall immediately furnish counsel and defend the member.

(c) The Commonwealth shall be responsible for judgments rendered against the member in job-related suits where the bargaining unit member has acted within the scope and responsibility of his/her office.

Award at 10, ¶ 18. The arbitrator appointed by the Commonwealth dissented from Paragraph 18 on the theory that it was contrary to law and not within the panel's jurisdiction.

The Commonwealth petitioned the Commonwealth Court to vacate Paragraph 18, arguing that it requires the Commonwealth to take actions that are expressly prohibited by the first three sections of Title 4, Chapter 39 of the Administrative Code. *See* 4 Pa.Code §§ 39.1–39.3. The Union countered

§ 64. It is authorized, among other things, to standardize qualifications for employment, titles, salaries, and wages of persons employed by state agencies, *see id.* § 249(a), and to "make rules and regulations providing for travel, lodging and other expenses" for which executive branch employees may be reimbursed. *Id.* § 249(f).

that the portions of the Code cited by the Commonwealth are statements of policy, and not binding regulations with the force and effect of law.[5]

The Commonwealth Court vacated Paragraph 18 of the Award. *See DOC v. Pa. State Corr. Officers Ass'n,* 932 A.2d 359 (Pa.Cmwlth.2007) (*en banc*). The court first explained that judicial scrutiny of Section 805 arbitration awards has been limited to narrow certiorari review, under which a court only considers questions relating to the arbitrator's jurisdiction, the regularity of the proceedings, an excess of the arbitrators' powers, and constitutional deprivations. *See id.* at 364 n. 7 (citing *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 71, 656 A.2d 83, 85 (1995)). Recognizing that the present dispute only concerns the third question—whether the arbitration panel exceeded its powers—the Commonwealth Court observed that an award will be vacated on such basis when it requires the public employer to perform an act that is not within its authority, *see Appeal of Upper Providence Police,* 514 Pa. 501, 513, 526 A.2d 315, 321 (1987), or that it is legally precluded from performing, i.e., that it could not do voluntarily, *see Betancourt,* 540 Pa. at 79, 656 A.2d at 90. The court reasoned that the threshold question for purposes of such analysis "is the precise nature of Chapter 39 of Title 4 of the Pennsylvania Code," that is, whether it is a regulation with the force of law, or merely a statement of policy, as the Union claimed. *See Pa. State Corr. Officers Ass'n,* 932 A.2d at 365.

The court then discussed the distinction between a regulation and a statement of policy under the Commonwealth Documents Law.[6] It noted that a provision in the Administrative Code may constitute a statement of policy issued pursuant to the agency's interpretive rule-making power, in which case it would not bind a reviewing court. *See Borough of Potts-*

5. The Union also unsuccessfully argued that the Commonwealth had waived its objection. No issue regarding waiver is presently before this Court.

6. Act of July 31, 1968, P.L. 769, No. 240 (as amended, 45 P.S. §§ 1102–1602).

*town v. Pa. Mun. Ret. Bd.,* 551 Pa. 605, 609–10, 712 A.2d 741, 743 (1998). However, a regulation promulgated pursuant to the agency's legislative rule-making power would be as binding upon a reviewing court as a statute. The court stated that a regulation is legislative in nature if it is: (a) adopted within the agency's granted power; (b) issued pursuant to proper procedure; and (c) reasonable. *See Tire Jockey Serv., Inc. v. DEP,* 591 Pa. 73, 108, 915 A.2d 1165, 1186 (2007).

Analyzing these three prongs, the court first held that, in promulgating Chapter 39, the Executive Board acted under its legislatively granted power reflected in Section 709(f) of the Administrative Code of 1929,[7] *see* 71 P.S. § 249(f) (authorizing the Executive Board to make regulations providing for travel, lodging, and other expenses for which executive branch employees may be reimbursed), *cited in* note 4, *supra,* and followed all of the correct procedures for adopting a regulation, as opposed to a statement of policy. The Commonwealth Court also indicated that the Executive Board followed the same procedures for every amendment to Chapter 39. The court then proceeded to conclude that Chapter 39 is reasonable.

Having determined that Chapter 39 contains regulations with the force of law, the Commonwealth Court considered whether Paragraph 18 of the Award forced the Commonwealth to violate those regulations. First, the court explained, the regulations generally preclude the Commonwealth from providing an attorney for criminal matters, *see* 4 Pa.Code § 39.1(a), but the Award requires the employer to consult with the employee in the selection of an attorney and pay that attorney's fees. This requirement, the court reasoned, violates Section 39.1(a).[8] In addition, the court noted that the

7. Act of April 9, 1929, P.L. 177, No. 175 (as amended, 71 P.S. §§ 51–732).

8. Section 39.1 states:

(a) The Commonwealth will not provide an attorney to defend a present or former official or employe in a criminal case arising from acts or omissions occurring while in the service of the Commonwealth. If it is determined by the General Counsel or the General Counsel's designee that there is no basis for the prosecution as a

General Counsel has discretion vested by Section 39.1(b) to allow or disallow reimbursement of attorney fees where it is determined that the prosecution had some basis in law or fact, but the employee's defense is ultimately successful. *See* 4 Pa.Code § 39.1(b). Under Paragraph 18, however, the Commonwealth must pay the employee's legal fees, even where the General Counsel determines that the prosecution is meritorious. *See Pa. State Corr. Officers Ass'n*, 932 A.2d at 368–69 & n. 18.

As to civil actions, the Commonwealth Court explained that Paragraph 18 requires the employer to provide counsel and indemnify the employee in all civil suits involving job-related conduct, even for intentional or malicious behavior by the employee. Chapter 39, however, only requires legal representation for negligent or other unintentional misconduct occurring in the course and scope of employment. *See* 4 Pa.Code § 39.2.[9] With regard to intentional conduct, Chapter 39 requires defense and indemnification only where the General

matter of law or fact, the Commonwealth will reimburse the employe for reasonable attorneys fees and to that end will make any required advance of these fees, limited by the balance in the retirement account of the employe.

(b) In a case in which the General Counsel or the General Counsel's designee does not determine that there is no basis for the prosecution in law or fact, he may nevertheless authorize the reimbursement of reasonable attorneys fees if the employe's defense is successful.

4 Pa.Code § 39.1.

9. Section 39.2, entitled, "Civil cases involving unintentional conduct," states:

When a Commonwealth official or employe is sued in his official or individual capacity for alleged negligence or other unintentional misconduct occurring while in the scope of employment, the Commonwealth will provide a defense in all cases. If an insurance policy purchased by the Commonwealth affords coverage, the insurance company will undertake the defense with an attorney of its choosing at its expense. If there is no insurance coverage, the Commonwealth will provide an attorney to defend the official or employe. The Commonwealth will indemnify the defendant for the expense of a judgment against him in this case. The defendant may engage his own attorney but any attorneys fees will not be reimbursed by the Commonwealth and indemnification will be in the sole discretion of the General Counsel.

4 Pa.Code § 39.2.

Counsel concludes that the conduct was within the scope of employment and involved a good faith exercise of the employee's authority.[10] *See* 4 Pa.Code § 39.3(a). The Commonwealth Court found that Paragraph 18 disregards the mandate that the General Counsel must assess the nature of the employee's conduct before deciding whether to defend the employee or provide indemnification. As such, the court deemed Paragraph 18 to constitute an excess of the arbitration panel's authority, as it divested the General Counsel of the decision-making power she would otherwise be required to undertake in accordance with Chapter 39. *See Pa. State Corr. Officers Ass'n,* 932 A.2d at 369. As for the Union's contention that the General Counsel could abuse her discretion, the court observed that the employee retains the right to lodge an

**10.** Specifically, Section 39.3, pertaining to civil cases involving intentional or malicious conduct, provides:

(a) *Good faith in exercise of authority.* Regardless of the allegations made against the defendant, if it appears to the General Counsel or to the General Counsel's designee that the defendant's conduct giving rise to the cause of action was within the scope of his employment and a good faith exercise of his authority, the Commonwealth, or its insurance company if there is coverage, will undertake the defense with an attorney of its choosing at its expense, and will indemnify the defendant for the expense of a judgment against him or a settlement that is approved by the General Counsel or the General Counsel's designee. The defendant may engage his own attorney but indemnification and reimbursement of attorneys fees by the Commonwealth will be in the sole discretion of the General Counsel.

(b) *Bad faith or malicious conduct, or conduct outside the scope of employment.*

(1) If the General Counsel or the General Counsel's designee determines that the defendant's conduct was a bad faith exercise of his authority, malicious or outside the scope of his employment, the General Counsel, in his sole discretion, will determine whether the Commonwealth will undertake the defense of the defendant. The Commonwealth will not indemnify the defendant for a judgment against him, and will notify the defendant that he may be subject to personal liability and should engage his own attorney.

(2) If the General Counsel or the General Counsel's designee has determined initially that the defendant's conduct was a bad faith exercise of his authority, malicious or outside the scope of his employment, and the defendant ultimately prevails in the civil action, the General Counsel, in his sole discretion, may determine that the Commonwealth will reimburse the defendant for the costs of defense and fees of his private attorney.

4 Pa.Code § 39.3.

administrative appeal that is reviewable by the Commonwealth Court or by this Court upon allowance.[11]

Judge Pellegrini authored a dissent, which Judges Smith–Ribner and Friedman joined. The dissent first focused on Section 805 and its directive that an arbitration award is final and binding unless it requires a legislative enactment to be effective. Explaining that no such enactment is necessary under the present award, the dissent would have found Paragraph 18 final and binding. The dissent also opined that the provisions of the Administrative Code vesting authority in the Executive Board had been superseded by PERA, which gives public employees the right to bargain. Furthermore, it observed that the award is only at odds with a regulation, which is not a legislative enactment. In the dissent's view, the majority's reasoning would effectively eliminate public employee collective bargaining because of the numerous statutes vesting exclusive jurisdiction in department heads, city councils, mayors, and supervisors to set salaries and other terms and conditions of employment. *See Pa. State Corr. Officers Ass'n*, 932 A.2d at 371 (Pellegrini, J., dissenting).

Even if the regulations could be viewed as being tantamount to statutory enactments, Judge Pellegrini disagreed with the majority's conclusion that a matter is not a proper subject of bargaining simply because it is addressed in the equivalent of a statute. Absent a direct legislative prohibition against negotiating over an issue, Judge Pellegrini concluded that a subject impacting wages, hours, or other terms and conditions of employment must be negotiated. Additionally, the dissent would have concluded that the Award was not in excess of the arbitrators' powers, as it did not require the employer to provide legal representation that was forbidden by Chapter

11. Finally, in answering the dissent, the majority suggested that legal representation and indemnification do not constitute bargainable wages or other terms and conditions of employment for purposes of Section 701. It reasoned that representation and indemnification are not forms of "compensation" as such, since they constitute a net zero gain and, moreover, alleged malicious or criminal conduct can never constitute the performance of an employee's duties. *See id.* at 370–71 & n. 23.

39.[12]

This Court granted the Union's petition for allowance of appeal, limited to the question of whether the Commonwealth Court's decision was in accord with Section 805 of PERA, 43 P.S. § 1101.805. *See DOC v. Pa. State Corr. Officers Ass'n,* 601 Pa. 102, 971 A.2d 1124 (2009) (*per curiam*). Although Section 805 contains a proviso that arbitration decisions are merely advisory to the extent they would require legislative enactment to become effective, no issue regarding that proviso was timely raised below, and the parties agree that Paragraph 18 is not merely advisory. *See* Brief for Union at 44; Brief for Commonwealth at 8, 11. Accordingly, we will not address that portion of Section 805. Rather, what is at issue here is the propriety of the Commonwealth Court's vacatur of Paragraph 18 notwithstanding that Section 805 makes the Award "final and binding upon both parties."

## II. Review of Section 805 Awards

Section 701 of PERA gives public employees the right to bargain collectively with their employers regarding the "wages, hours, and other terms and conditions of employment." 43 P.S. § 1101.701; *see also id.* § 1101.1201(a)(5), (b)(3) (requiring both the union and the public employer to bargain collectively in good faith). Furthermore, as discussed, any impasse in collective bargaining involving the H–1 bargaining unit that cannot be resolved through mediation is submitted to a panel of arbitrators whose decision is final and binding upon the parties. *See* 43 P.S. § 1101.805.

The Commonwealth Court has applied narrow certiorari in reviewing Section 805 awards, *see FOP, Lodge No. 5 ex rel. Costello v. City of Phila.,* 725 A.2d 206, 210 (Pa.Cmwlth.

---

12. The dissent also questioned the majority's conclusion that legal representation and indemnification are not terms and conditions of employment. *See supra* note 11. The dissent reasoned that public officials are routinely exposed to litigation for actions taken during employment, and thus, corrections officers could be subject to financial ruin for meritless charges brought by inmates. Hence, the dissent concluded that this type of financial protection constitutes a term of employment. *See Pa. State Corr. Officers Ass'n,* 932 A.2d at 376–77 & nn. 10–11.

1999), and the parties presently agree that this is an appropriate standard. *See* Brief for Union at 4; Brief for Commonwealth at 1, 5, 7. As the *Costello* court pointed out, Section 805's terminology is similar to the language employed by Act 111,[13] which addresses collective bargaining between police and fire personnel and their public employers. Although awards issued pursuant to Act 111 are also final and binding on the parties, with "no appeal" permitted to any court, *see* 43 P.S. § 217.7, by longstanding precedent they are nonetheless subject to judicial review in the nature of narrow certiorari. *See Washington Arbitration Case*, 436 Pa. 168, 174, 259 A.2d 437, 441 (1969); *Upper Providence Police*, 514 Pa. at 507, 526 A.2d at 318 (quoting *Moon Twp. v. Police Officers of Moon Twp.*, 508 Pa. 495, 500 n. 4, 498 A.2d 1305, 1307 n. 4 (1985)). Such review embodies a balancing of the legislative policy objective of shielding arbitration awards from judicial modification, with the residual need to avoid giving arbitrators unlimited powers. *See City of Phila. v. FOP, Lodge No. 5*, 564 Pa. 290, 299, 768 A.2d 291, 296 (2001).[14]

■ These competing policy concerns are likewise in tension with regard to interest arbitration undertaken pursuant to Section 805 of PERA. Like Act 111 employees, Section 805 employees are prohibited, for policy reasons, from striking as a means of exerting pressure on their employers, *see* 43 P.S. § 1101.805; *Franklin County Prison Bd. v. PLRB*, 491 Pa. 50, 59, 417 A.2d 1138, 1142 (1980), as the Union concedes, *see* Brief for Union at 19, 44. Instead, they must rely on interest arbitration to settle bargaining disputes. *See* 43 P.S. § 1101.805; *cf. Pa. State Police v. Pa. State Troopers Ass'n (Smith)*, 559 Pa. 586, 591–92, 741 A.2d 1248, 1251 (1999) (stating that Act 111 employees' inability to strike is "offset" by their right to bargain collectively and have arbitration awards remain generally insulated from judicial review).

13. Act of June 24, 1968, P.L. 237, No. 111 (as amended, 43 P.S. §§ 217.1–217.10).

14. Although *FOP, Lodge Number 5* involved an Act 111 grievance arbitration award, it employed the same narrow certiorari standard applicable to Act 111 interest arbitration awards. *See Betancourt*, 540 Pa. at 78, 656 A.2d at 89.

Thus, to properly resolve this tension, one can reasonably argue that judicial scrutiny of the outcome of such arbitration in the present context should be as tightly constrained as it is relative to arbitration awards within the Act 111 framework. We are aware that this would raise interpretive difficulties, including the question of whether Act 111's express prohibition on appellate review is thereby rendered surplusage, contrary to accepted canons of statutory construction. *See* 1 Pa.C.S. §§ 1921(a), 1922(2); *Richards v. UCBR*, 564 Pa. 375, 381, 768 A.2d 852, 856 (2001). Still, the General Assembly has not supplied any guidance or, indeed, specifically permitted any manner of judicial examination of Section 805 arbitration proceedings. *See generally Costello*, 725 A.2d at 209–10. In view of all of these factors, then, we will review Paragraph 18 pursuant to the narrow certiorari precept, as requested by both parties.

As explained, narrow certiorari only allows courts to consider questions relating to the arbitrators' jurisdiction, the regularity of the proceedings, an excess of the arbitrators' powers, and constitutional deprivations. *See City of Pittsburgh v. FOP*, 595 Pa. 47, 53, 938 A.2d 225, 229 (2007). As the parties have not challenged the regularity of the proceedings, and as no constitutional or jurisdictional question has been raised, our inquiry is limited to a determination of whether the arbitration panel exceeded its powers. This limitation is consistent with the question on which review was granted, because an arbitration board exceeds its power when it mandates that the public employer carry out an illegal act, *see Chirico v. Bd. of Supervisors for Newton Twp.*, 504 Pa. 71, 74, 470 A.2d 470, 472 (1983)—that is, one that it could not have performed voluntarily, *see Upper Providence Police*, 514 Pa. at 514, 526 A.2d at 321—or perform an action unrelated to a bargainable term or condition of employment, *see Washington Arbitration*, 436 Pa. at 176–77, 259 A.2d at 442; *Upper Providence Police*, 514 Pa. at 514–15, 526 A.2d at 321–22.[15]

15. An award pertaining to an issue that was not placed in dispute before the board also reflects an excess of the arbitrators' powers. *See Upper Providence Police*, 514 Pa. at 515 n. 5, 526 A.2d at 322 n. 5; *cf.*

However, a "mere error of law" by an arbitration panel will not support a finding that it exceeded its powers. *FOP, Lodge No. 5*, 564 Pa. at 299, 768 A.2d at 297; *accord Upper Providence Police*, 514 Pa. at 515, 526 A.2d at 322. We must now apply these precepts to Paragraph 18 of the Award.

### III. Litigation Protection as a Term or Condition of Employment

A threshold question—and one on which the Commonwealth Court panel was divided—is whether Paragraph 18 pertains to a term or condition of employment that is bargainable under Section 701 of PERA. *See* 43 P.S. § 1101.701 (requiring collective bargaining "with respect to wages, hours and other terms and conditions of employment"). If it does not, then the provision was in excess of the arbitrators' authority, the Commonwealth Court was correct to vacate it on that basis, and our inquiry will be at an end.[16]

In *PLRB v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), this Court distinguished between bargainable terms and conditions under Section 701, and items that constitute matters of inherent managerial policy under Section 702. The Court indicated that, in drawing such a line, the directness of the impact of the issue on the wellbeing of the employee must be weighed against its effect on the operation of the agency in question. *See id.* at 506–07, 337 A.2d at 268

*FOP, Lodge No. 5*, 564 Pa. at 297, 768 A.2d at 295 (striking a grievance award unrelated to the issue in dispute). The Commonwealth does not contend that Paragraph 18 is invalid on this basis.

16. The Commonwealth asks us not to address this question because it was raised as an issue in the Union's petition for allowance of appeal, and allocatur was expressly denied on all issues except the one that this Court accepted for review. However, the question is subsumed within the review standard for Section 805 awards as articulated above. Also, any failure on our part to resolve it would leave in place the appellate court's conclusion, in the nature of an alternative holding, *see generally Commonwealth v. Markman*, 591 Pa. 249, 282, 916 A.2d 586, 606 (2007), that such benefits do not constitute terms and conditions of employment. *See supra* note 11. That holding, as noted, would constitute an independent basis for vacatur regardless of whether this Court ultimately determined that Paragraph 18 requires the employer to perform an illegal act.

(citing *Nat'l Educ. Ass'n of Shawnee Mission v. Bd. of Educ. of Shawnee Mission Unified Sch. Dist. No. 512*, 212 Kan. 741, 512 P.2d 426 (1973)). Although Section 702 is not directly at issue here, we find the analysis employed in *State College Area School District* helpful because it illustrates that the range of items comprising bargainable terms and conditions of employment may vary depending on the activities entailed by the employment in question. Thus, we need not decide whether litigation protection in the nature of that sought by the Union constitutes a term or condition of employment for every type of public employee, but whether it is a bargainable item for H–1 bargaining unit members.

■ *State College Area School District* also reflects the reality that some items may be of fundamental concern to the employees' interest in wages, hours, and other terms and conditions of employment, while still implicating, or at least "touching on," basic managerial policy. *State Coll. Area Sch. Dist.*, 461 Pa. at 507, 337 A.2d at 268. Indeed, two recent decisions of this Court recognize that these categories can intersect, *see Borough of Ellwood City v. PLRB*, 606 Pa. 356, 373, 998 A.2d 589, 599 (2010) ("[M]atters that constitute working conditions may also implicate matters of inherent managerial prerogative, which are not subject to collective bargaining."); *City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 606 Pa. 447, 472, 999 A.2d 555, 570 (2010) ("*IAFF* ") ("Because management decisions regarding policy or direction almost invariably implicate some aspect of employer-employee relations or the workplace, disputed arbitration awards more often than not concern both the terms and conditions of employment and the public employer's managerial prerogatives."), as does Section 702 itself. *See* 43 P.S. § 1101.702 (subjecting items that fall into both categories to a meet-and-discuss requirement (*see infra* note 17)). In view of this overlap, *IAFF* and *Ellwood City* clarified that, under the excess-powers prong of narrow certiorari, the following test applies: first, the court asks whether the item in dispute is rationally related to the terms and conditions of employment, i.e., whether it is germane to the working environment. If

not, then the item is not subject to mandatory bargaining. If a rational relationship does exist, however, the court then inquires whether collective bargaining over the topic would unduly infringe upon the public employer's essential managerial responsibilities. If so, the award reflects an excess of the arbitrators' powers. *See Ellwood City*, 606 Pa. at 374–75, 998 A.2d at 600; *IAFF*, 606 Pa. at 473–75, 999 A.2d at 571.[17]

■ Accordingly, and as already stated, our first task is to determine whether the litigation benefits in issue constitute terms or conditions of employment for H–1 bargaining unit members.

By the nature of their jobs, these employees come into daily, physical contact with prison inmates or patients at state mental hospitals in a manner that tends to expose them to a heightened probability of lawsuits and potentially frivolous criminal complaints filed by the persons over whom they exercise authority. For example, the Union references aspects of the record reflecting the litigious nature of the inmates and patients; it emphasizes that hundreds of lawsuits are filed against H–1 unit members in any given year, *see, e.g.*, R.R. 363a (hearing exhibit), and that a number of these actions include criminal charges that are ultimately dismissed as frivolous. The Union additionally observes that, during the hearings, it highlighted the unique functions performed by its members, arguing that these functions set them apart from all other state-employee bargaining units except the Pennsylvania State Police:

> [O]nly a handful of Commonwealth employees are … expected, as a condition of their employment, to interact with other individuals who desire to … injure or kill [them].

17. The assertion in *State College Area School District*, that if a "matter is one of inherent managerial policy but does affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects," is not to the contrary. A close reading of that opinion reveals that this pronouncement did not pertain to mandatory bargaining, but to inherent managerial policies subject to Section 702's separate meet-and-discuss mandate, which, by its terms, applies to managerial policies that have an impact on wages, hours, and other terms and conditions of employment. *See* 43 P.S. § 1101.702.

During the hearings, the [Union] presented evidence show-
ing that the animosity of the jailed toward their jailers is
expressed in many forms, one of which was the filing of
frivolous lawsuits against [Union] members.

Brief for Union at 10–11 (emphasis omitted) (citing R.R. 243a,
253a, 363a, 441a–443a); *see also id.* at 42 ("[I]nmates have no
love lost for the very people whose jobs are to keep them from
loosing themselves upon ... society."). These averments,
moreover, are not presently contradicted by the Common-
wealth. Thus, we agree with the Union that, in view of this
unique set of circumstances under which the employees must
perform their jobs, litigation protection is a term of employ-
ment for H–1 unit members.

The next question is whether Paragraph 18's directive that
such protection be provided unduly infringes upon the Com-
monwealth's inherent managerial prerogatives. Since the Of-
fice of General Counsel already has discretion under the
Pennsylvania Code to provide such representation or indemni-
fication for legal fees and judgments, it would be difficult for
the Commonwealth to argue that requiring it to supply these
benefits unduly infringes upon its managerial prerogatives as
an employer. Thus, in performing the analysis required by
*Ellwood City* and *IAFF*, we find that Paragraph 18 pertains to
bargainable subject matter for H–1 employees. *Accord State
v. Pub. Safety Employees Ass'n*, 93 P.3d 409, 415 (Alaska
2004); *cf. Appeal of Cumberland Valley Sch. Dist.*, 483 Pa.
134, 144, 394 A.2d 946, 951 (1978) (stating that fringe benefits
for school employees, including reimbursement for tuition
expenses, constitute bargainable "wages" under Section
301(14) of PERA, 43 P.S. § 1101.301(14), which defines that
term to include "compensation for services rendered").[18]

---

**18.** In reaching the opposite conclusion, the Commonwealth Court fo-
cused on one instance of alleged malicious conduct by an employee,
and reasoned that such an action can never be undertaken in the
performance of public duties. *See Pa. State Corr. Officers Ass'n*, 932
A.2d at 371 & n. 23. We decline to adopt this reasoning because it
confuses the nature of the allegation with the merit, or lack thereof, of
the plaintiff's case (or the Commonwealth's case in the criminal arena).
It thus omits consideration of the impact on employees of litigation in

## IV. Illegality

We now proceed to the central question in this case: whether the Award constitutes an excess of the arbitrators' authority because it requires the employer to perform an illegal act. The Union first urges that the regulations in question simply reflect the manner in which the Office of General Counsel has elected to exercise its discretion going forward and, as such, they amount to mere policy statements lacking the force of law. Moreover, even if the regulations are deemed to contain binding norms, and thus to constitute substantive regulations, the Union proffers that Paragraph 18 is valid nonetheless because it does not require the Commonwealth to perform any act that it could not already have done voluntarily through the exercise of its discretion. The Commonwealth responds that Chapter 39 of Title 4 of the Pennsylvania Code has the force and effect of law because it contains reasonable regulations that were properly promulgated pursuant to the Commonwealth Attorneys Act and the Regulatory Review Act. The Commonwealth continues that Paragraph 18 is contrary to law because it divests the Office of General Counsel of the discretion that it is required to exercise under Chapter 39 in relation to civil matters, and, further, requires the Commonwealth to provide representation and/or attorneys' fees in criminal matters. In this latter regard, the Commonwealth emphasizes that Chapter 39 prohibits Commonwealth attorneys from representing employees in criminal matters, as to do so would constitute a conflict of interest. These arguments raise two distinct issues as set forth below.

### A. *Legislative rules versus policy statements*

 As the Commonwealth Court recognized, the Executive Board promulgated Chapter 39 pursuant to a specific legislative grant of power under the Administrative Code of 1929 (*see supra* note 7), namely, Section 709(f) of that statute, which allows it to make rules and regulations regarding reimbursements to employees. *See* 71 P.S. § 249(f); *see also*

instances where malicious or criminal conduct is alleged, but it remains unclear whether the employee committed actionable misconduct.

*Yurgosky v. AOPC,* 554 Pa. 533, 541–42, 722 A.2d 631, 635 (1998) (recognizing that Section 709 is the source of the Board's authority in this respect). Although a reimbursement in this context generally refers to a funds transfer to an employee after the employee has incurred the expense, we view Section 249(f) to provide an adequate basis for the regulations reflected in Sections 39.1 through 39.3, including the advancement of funds, where appropriate, for the item in question.

Additionally, the Union does not deny that the provisions of Chapter 39 were promulgated using proper administrative procedures or that they are reasonable. As for their asserted character as policy statements, the Union relies on the fact that discretion is reposited within the Office of General Counsel in certain defined circumstances. For example, if the General Counsel determines that a criminal prosecution arising from the acts or omissions of a Commonwealth employee has a basis in law or fact, she retains discretion to authorize reimbursement of legal fees if the employee's defense is ultimately successful. *See* 4 Pa.Code § 39.1(b). Examples such as these, however, are insufficient to demonstrate that Chapter 39 cannot be a substantive regulation.

In *Lopata v. UCBR,* 507 Pa. 570, 493 A.2d 657 (1985), this Court summarized the difference between regulations and policy statements:

A properly adopted substantive rule establishes a standard of conduct which has the force of law ... The underlying policy embodied in the rule is not generally subject to challenge before the agency. A general statement of policy, on the other hand, does not establish a "binding norm." ... A policy statement announces the agency's tentative intentions for the future.

*Id.* at 575, 493 A.2d at 660 (quoting *PHRC v. Norristown Area Sch. Dist.,* 473 Pa. 334, 350, 374 A.2d 671, 679 (1977), in turn quoting *Pac. Gas & Elec. Co. v. Fed. Power Comm'n,* 506 F.2d 33, 41 (D.C.Cir.1974)) (ellipsis in original); *see also Ins. Fed'n of Pa. v. Dep't of Ins.,* 601 Pa. 20, 45–46, 970 A.2d 1108, 1123 (2009) (Opinion Announcing the Judgment of the Court).

Thus, as has previously been stated, policy statements lack binding effect, *Borough of Pottstown,* 551 Pa. at 610 n. 8, 712 A.2d at 743 n. 8, which is not true of Sections 39.1 through 39.3. For example, if the General Counsel determines that a criminal prosecution has no basis in law or fact, although she may not provide a lawyer to defend the employee, she must reimburse the employee for reasonable attorney's fees and advance the same in an amount limited only by the balance in the employee's retirement account. *See* 4 Pa.Code § 39.1(a). The other two sections at issue contain provisions that are similarly mandatory in nature. *See id.* § 39.2 (stating, *inter alia,* that the Commonwealth must provide a defense in all cases where a Commonwealth employee is sued for negligence or other unintentional conduct occurring in the scope of employment); *id.* § 39.3(a) (requiring the Commonwealth or its insurance company to defend· and indemnify an employee against civil liability notwithstanding the nature of the allegations, so long as it appears to the General Counsel that the employee's conduct "was within the scope of his employment and a good faith exercise of his authority").

These provisions comport with the definition of a substantive regulation because they create a controlling standard of conduct, in this case the conduct of the Commonwealth as employer. The fact that the benefits are, in some instances, dependent on a prior determination by the Office of General Counsel concerning the nature of the underlying conduct does not convert these regulations into discretionary rules or undercut their status as setting forth binding norms. Simply put, there is a difference between a determination regarding actions that have occurred, and an exercise of discretion regarding benefits to be conferred. We note, as well, that even statutes enacted by the General Assembly may allow for the exercise of discretion by governmental actors, *see, e.g.,* 42 Pa.C.S. § 9721 (giving a sentencing court discretion to run multiple sentences concurrently or consecutively); *Commonwealth v. Graham,* 541 Pa. 173, 184, 661 A.2d 1367, 1373 (1995) (recognizing that discretion), and plainly their status as valid and binding statutes is not thereby undermined. Accordingly,

we agree with the Commonwealth Court's conclusion that Sections 39.1 through 39.3 constitute substantive regulations.

B. *The interrelationship between the Award and the regulations*

The question then becomes whether Paragraph 18 requires the Commonwealth to perform an act that these regulations prohibit, thereby constituting an excess of the arbitrators' powers. As noted, the Commonwealth asserts that the Award does require an illegal act because, in some instances, it mandates reimbursement, indemnification, and/or representation without the exercise of employer discretion as set forth in the regulations. The Commonwealth states that the Award thereby divests it of the discretion it is legally obligated to exercise. *See* Brief for Commonwealth at 16–20. On the other hand, the Union's position is that, if a certain benefit (such as providing a legal defense) is discretionary with an employer, clearly the employer *may* confer it; hence, an arbitration award requiring its conferral cannot possibly command the employer to take an action that it could not have done voluntarily. *See* Brief for Union at 34–35.

A review of our cases in which this Court has applied the excess-of-authority prong reveals that it, like narrow certiorari itself, is "very constricted," *FOP, Lodge No. 5*, 564 Pa. at 295, 768 A.2d at 294, and that this "constrictedness" is necessary to give effect to the legislatively-mandated finality of arbitration awards as a counterbalance for the employees' inability to strike. In *FOP, Lodge Number 5*, for example, this Court upheld an interest arbitration award against an excess-of-authority challenge where the arbitrator required the City of Philadelphia to assign certain duties to police staff inspectors rather than police captains, and to bargain over any decision to eliminate the rank of staff inspector. While these types of decisions may have been essentially managerial in character, this Court emphasized:

We have stated that *"[o]ur definition of what constitutes 'an excess of an arbitrator's power' [is] far from expansive."* Essentially, if the acts the arbitrator mandates the employ-

er to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority.

*Id.* at 299, 768 A.2d at 296–97 (quoting *Pa. State Troopers Ass'n*, 559 Pa. at 592, 741 A.2d at 1252) (brackets in original, emphasis added). Thus, the fact that the award at issue there pertained to the terms and conditions of employment and did not require an illegal act was sufficient to insulate it from judicial modification. *See id.* at 300, 768 A.2d at 297.

Similarly, in *Smith*, this Court exercised narrow certiorari review of a grievance award where a state trooper was fired after committing illegal conduct, including driving while intoxicated and placing a loaded gun into a victim's mouth while threatening to kill her. The grievance arbitrator overruled Smith's discharge on the basis that it was disproportionate to discipline meted out in other cases. In upholding the award as falling within the arbitrator's power, this Court referred to the "severe limits placed on our appellate authority" which are "dictated by the legislature as part of a carefully crafted plan of remediation to correct flaws" in the prior system. *Smith*, 559 Pa. at 591, 741 A.2d at 1251.[19] The Court recited that, in *Betancourt*, it had specifically rejected a broad scope of review of such awards, and explained that the legislative restrictions placed on judicial review prevent courts from interfering with an arbitrator's determination "merely because [it] is unpalatable, or even extremely distasteful[.]" *Id.* at 590 n. 3, 741 A.2d at 1251 n. 3. Finally, the Court refused the employer's request to broaden the excess-of-arbitrator's-power prong to include an assessment of whether the award contravenes public policy, as to do so would "markedly increase the judiciary's role" and thereby "undercut the legislature's intent of preventing protracted litigation in this arena." *Id.* at 593–94, 741 A.2d at 1253.[20]

19. Although the "plan of remediation" in view was Act 111, as discussed previously the same essential remedy, with its concomitant restrictions on judicial review, applies in the present, Section 805, context.

20. When an employee covered by PERA is not within the category of public safety personnel entitled to narrow certiorari review, courts use

On the other hand, in *Washington Arbitration*, an interest arbitration award requiring a municipality to pay hospitalization insurance premiums for its police officers' family members was deemed to represent an excess of powers because such payments were prohibited by statute. *See Washington Arbitration*, 436 Pa. at 178, 259 A.2d at 443.

Given the narrow confines to which this Court has historically adhered in applying the excess-of-authority prong, we are not convinced that an award requiring the conferral of litigation benefits in situations where the employer already retains discretion to confer those benefits is judicially voidable. For one thing, as the Union points out, it does not require an illegal act or an act that the employer could not undertake voluntarily. Moreover, except in the most egregious cases of employee misconduct (discussed below), the benefits constitute legitimate terms or conditions of employment. In this latter respect, we find *Washington Arbitration* to be particularly helpful, not only because it illustrates the type of award that is properly considered to reflect an excess of the arbitration panel's powers, but because it is the seminal case stating what that terminology means. The Court explained:

> [W]e are of the opinion that [arbitration] panels may not mandate that a governing body carry out an illegal act. We reach this result by quite frankly reading into the enabling legislation the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment. Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict.... The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily.

the "essence test" for grievance awards issued pursuant to an existing CBA. *See State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). Although that standard is also deferential, it admits of a limited exception whereby an otherwise valid award will be vacated if it is found to be contrary to public policy. *See Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n*, 595 Pa. 648, 665–66, 939 A.2d 855, 865–66 (2007).

We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions.

*Id.* at 176–77, 259 A.2d at 442 (emphasis in original). Thus, the genesis of the excess-of-powers prong of narrow certiorari review lies in the requirement that the contested award deal only with legitimate terms and conditions of public employment.

Here, we have already determined that the litigation benefits addressed by Paragraph 18 constitute a bargainable term of employment for the public safety employees who are members of the H–1 bargaining unit. Further, in many instances the Commonwealth, under its own regulations, may provide such benefits through an exercise of its discretion. In keeping with the narrow confines of review for an excess of the arbitrators' authority, we find that an award affirmatively requiring such benefits in the same circumstances where they are discretionary is not beyond the arbitrators' power, as it does not require an illegal act. Put differently, the Award's removal of any discretion embodied in Sections 39.1 through 39.3 does not constitute an excess of the arbitrators' authority under *Washington Arbitration* and its progeny.[21]

## C. *Effect on the Award's specific provisions*

■ In light of the above analysis, it is evident that Paragraph 18 should not have been completely invalidated under narrow certiorari review. Rather, it should only have been deemed unenforceable to the extent it requires an illegal act. *Cf. United Parcel Serv. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union No. 430*, 55 F.3d 138, 142 (3d Cir.1995) (determining that a

---

21. We express no opinion whether a different outcome would obtain if the General Assembly had commanded that the Commonwealth retain discretion over the benefits at issue. For example, Section 702 of PERA expressly reserves to the employer "areas of discretion or policy" such as "functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure[,] and selection and direction of personnel." 43 P.S. § 1101.702. The litigation benefits in question here are not of the same character as those enumerated, and, indeed, the Commonwealth does not argue that Paragraph 18 contravenes Section 702.

grievance arbitration award is enforceable only to the extent it does not exceed the arbitrator's authority by going beyond the scope of the parties' submissions); *Washington Arbitration,* 436 Pa. at 179, 259 A.2d at 443 (vacating the portion of an interest arbitration award requiring the employer to perform an illegal act, while leaving the rest of the award intact). Since Paragraph 18 contains several distinct subsections, moreover, it is appropriate to set forth our specific conclusions in this regard relative to each substantive provision of Paragraph 18.

As to subsection (a), the Commonwealth, like the Commonwealth Court majority, is of the view that consulting with the employee in the selection of counsel and the paying of counsel fees amounts to defending the employee, which gives rise to a conflict of interest. We do not consider this to be an adequate basis on which to void subsection (a). First, the Commonwealth's objection predicated upon a possible conflict of interest cannot rest solely on the furnishing of legal fees, because its own regulations already permit fees to be advanced and/or reimbursed in criminal cases under some circumstances. *See* 4 Pa.Code § 39.1. To the degree the Commonwealth echoes the Commonwealth Court's assertion that paying legal fees and consulting on the selection of an attorney "is tantamount to providing an attorney," *Pa. State Corr. Officers Ass'n,* 932 A.2d at 368, we note that, whether or not a conflict would arise if the Commonwealth actually defended the employee from criminal charges, subsection (a) only calls for it to consult in the selection of an attorney and then pay reasonable fees. Regardless of the Commonwealth's status as an adverse party, there is no indication that it must remain involved in the employee's defense once an attorney is selected.[22] Accordingly, as we do not agree that there is a conflict of interest, Paragraph 18(a) should only be deemed invalid to the degree it contravenes the particular requirements of the Common-

---

**22.** Our legal system accepts that this type of compartmentalization can exist without a conflict. The furnishing to an indigent defendant of the services of a public defender at government expense is one example of where the government selects the defense attorney and pays his or her fees without raising a conflict of interest.

wealth's regulations—in particular, Section 39.1 of Title 4 of the Pennsylvania Code.

As noted, Paragraph 18(a) states, quite simply, that the Commonwealth must pay an employee's reasonable attorney's fees in any criminal action arising from the performance of the employee's duties. Section 39.1(a) addresses criminal cases that the Office of General Counsel deems frivolous, and requires reimbursement of all such fees, as well as advancement of the same limited only by the balance in the employee's retirement account. This provision is mandatory in the sense that it does not give the employer any discretion to decide whether or not to either advance or, ultimately, reimburse, the employee for reasonable counsel fees: the employer must advance fees up to the employee's retirement account balance, and may not advance fees beyond that amount; the employer also must reimburse the employee after-the-fact for any fees incurred that were not previously advanced. In light of these mandatory provisions, Paragraph 18(a) cannot be given effect to alter this scheme. Section 39.1(b), however, which addresses non-frivolous criminal cases, is of a somewhat different nature. While it does not authorize the General Counsel to pay attorney's fees as they become due, it does give her the discretion to reimburse those fees in the event that the employee's defense is ultimately successful. Hence, although Paragraph 18(a) cannot require contemporaneous payment of fees in these circumstances (as this is not authorized or permitted by the regulations), it can, in accordance with the analysis provided above, be implemented to require reimbursement of such fees where reimbursement would be permitted under Section 39.1(b) pursuant to an exercise of the employer's discretion—that is, where the employee's defense is successful. Of course, if the employee's defense is unsuccessful, Section 39.1(b) does not allow for payment or reimbursement of fees and, thus, Paragraph 18(a) cannot be given effect to require the same.[23]

---

**23.** The Commonwealth additionally maintains that subsection (a) is invalid because it overrides portions of Chapter 39 which "prevent[ ] the Commonwealth from becoming embroiled in litigation and criminal

Subsections (b) and (c) require the Commonwealth to defend Union members who are sued civilly so long as the suit arises from the performance of the employee's duties, and to pay any resulting judgment if the employee acted within the scope and responsibility of his office. Here again, in many cases the General Counsel is already required to provide such defense and indemnification—specifically, in cases of alleged negligence or other unintentional conduct, *see* 4 Pa.Code § 39.2, and in instances where it appears to the General Counsel that the defendant's conduct giving rise to the cause of action "was within the scope of his employment and a good faith exercise of his authority," regardless of the nature of the allegations. *Id.* § 39.3(a).

The only circumstance in which subsections (b) and (c) of Paragraph 18 may require an action at odds with the regulations arises when the General Counsel determines that the employee's conduct "was a bad faith exercise of his authority, malicious or outside the scope of his employment." 4 Pa.Code § 39.3(b)(1). Even then, the General Counsel is permitted to provide the employee with a legal defense, *see id.*, or reimburse the employee for fees and costs after a successful defense. *See id.* § 39.3(b)(2). Thus, the only instance in the civil arena where Paragraph 18 actually requires an action affirmatively forbidden by the regulations is reflected in subsection 18(c), which makes the Commonwealth "responsible for judgments rendered against the member in job-related suits

proceedings involving egregious abuses of authority or lewd and vulgar acts by employees—acts that are clearly outside the scope of employment." Brief for Commonwealth at 17. The Commonwealth alleges, in this regard, that similar arising-from-the-performance-of-duties language in a separate award favoring the State Police Troopers Association has been interpreted by grievance arbitrators to cover actions occurring while the individual is on duty, thus forcing the Pennsylvania State Police to defend troopers who commit crimes or engage in acts of sexual assault or harassment, so long as the trooper is "in uniform and on the clock." *Id.* at 19. The Commonwealth does not direct our attention to any judicial decisions embodying such a construction, or provide any basis to conclude that the interpretations rendered by various grievance arbitrators affect the viability of Paragraph 18(a). As we have indicated, moreover, that subsection may not be implemented in an instance where the charges are non-frivolous and the employee's defense is unsuccessful.

where the bargaining unit member has acted within the scope and responsibility of his/her office." [24] This conflicts with the regulations in any instance where the employee, although having acted within the scope and responsibility of his office for purposes of Paragraph 18, nevertheless acted in bad faith, maliciously, or outside the scope of employment for purposes of Section 39.3(b). Under such an occurrence, Paragraph 18(c)'s indemnification requirement is unenforceable due to the contrary regulation embodied in Section 39.3(b)(1). *See* 4 Pa.Code § 39.3(b)(1) (stating that the Commonwealth "will not" indemnify the defendant in such a scenario).

As a final consideration, by promulgating substantive regulations having the force and effect of law, the employer in this case—the Commonwealth—has been given the power to, in effect, legislate regarding a category of benefits that we have determined to be bargainable terms and conditions of employment, as explained above. This raises a substantial question under PERA concerning the extent to which the Commonwealth should be permitted, ultimately, to utilize its rule-making authority as a shield against conflicting arbitration awards, when such awards are subjected to narrow-certiorari judicial review. Indeed, allowing the Commonwealth to do so arguably implicates *Washington Arbitration's* caveat that a public employer should not be permitted to "hide behind self-imposed legal restrictions." *Washington Arbitration*, 436 Pa. at 177, 259 A.2d at 442. The Union recognizes that this question remains unresolved, *see* Brief for Union at 33, but it does not explore the matter substantively or provide any discussion concerning the proper limits of the contrary-to-law prong of narrow certiorari in these circumstances. Rather, its advocacy on this issue is limited to reinforcing its view that the regulations constitute mere policy statements. The Commonwealth, moreover, does not address the issue. Thus, we leave its ultimate determination for a future case or cases, and note only that, in this dispute, the restrictions on Paragraph 18's implementation, as detailed above, are not untoward, as

---

24. Paragraph 18 is silent with regard to out-of-court settlements.

they operate to withhold litigation protection in cases of egregious employee misconduct.

## V. Conclusion

Certain classes of governmental employees perform functions that are vital to public safety. These include police officers, firefighters, prison guards, individuals involved in the custody, care, and control of patients at state mental hospitals, and employees necessary to the functioning of the judiciary. During the last century, labor unrest among some of these groups led to legislation precluding them from striking, while giving them the ability to bargain collectively over terms and conditions of employment, together with the associated right to submit unresolved bargaining disputes to binding arbitration. *See generally Betancourt*, 540 Pa. at 77, 656 A.2d at 89. For more than forty years, this Court has interpreted the final and binding nature of such arbitration, within the Act 111 context pertaining to police and firefighters, to mean that judicial review of the outcome of such arbitration must be undertaken pursuant to the narrow certiorari standard. Today, we hold that the same essential policy goals permit the use of narrow certiorari for awards issued under Section 805 of PERA relative to the distinct class of public safety personnel involved in this appeal.

Under narrow certiorari, the appellant may only complain of procedural irregularities, constitutional violations, jurisdictional issues, and awards in excess of the arbitrator's authority. This latter type of claim will be recognized, *inter alia*, where an award requires an employer to take actions that it cannot perform voluntarily, that is, to perform illegal acts. We have concluded that where, as here, administrative regulations give the Commonwealth, as employer, discretion to provide certain benefits that are not identified by statute as implicating matters of inherent managerial policy, an award requiring such benefits where they would otherwise be discretionary does not require an illegal act for narrow certiorari purposes. As applied presently, Paragraph 18 is enforceable to the extent the litigation benefits in question would other-

wise be awardable subject only to the discretion of the Office of General Counsel. However, there are other instances in which the regulations affirmatively prohibit the granting of such benefits, and in these situations Paragraph 18 may not be enforced.

The Order of the Commonwealth Court is affirmed in part and reversed in part. Paragraph 18 of the Award is upheld with exceptions as indicated in this Opinion.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN, BAER and TODD join the opinion.

Justice McCAFFERY files a concurring and dissenting opinion.

Justice McCAFFERY, concurring and dissenting.

I agree with and join much that the majority has written. I agree with the majority's application of the narrow *certiorari* scope of review. I heartily agree with the majority's conclusion that Paragraph 18 of the interest arbitration award pertains to terms and conditions of employment. I believe that the *en banc* Commonwealth Court majority's conclusion regarding whether the coverage of legal expenses for civil and criminal actions pertaining to the affected public employees could be characterized as a term and condition of employment to be a patent, egregious, and far-reaching error in need of immediate correction. The majority's correction of that error will prove to be of significant value to the bench and bar.[1]

---

1. However, I distance myself from the majority's application of rationale from *City of Philadelphia v. International Ass'n of Firefighters, Local 22*, 999 A.2d 555 (Pa.2010), and *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 998 A.2d 589 (Pa.2010), which rationale, I continue to believe, has erroneously expanded the excess-of-authority prong of the narrow *certiorari* scope of review. *See City of Philadelphia, supra* (McCaffery, J. concurring and dissenting), and *Borough of Ellwood City, supra* (McCaffery, J. concurring).

Moreover, I disagree with the majority that PERA supports its determination that we may consider whether the award at issue unduly

Further, I agree with the majority's recognition that the excess-of-authority prong of the narrow *certiorari* scope of review is "very constricted;" and, thus, that prong must be applied in an especially narrow manner for purposes of judicial review of public employee arbitration awards. *See* Part IV(B) of the Majority Opinion (quoting *City of Philadelphia v. FOP, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291, 294 (2001)). Finally, I concur in the majority's result that certain provisions of Paragraph 18 of the interest arbitration award were within the arbitration panel's authority to award.

However, I disagree with the majority's conclusion that the arbitration panel in this case exceeded its power with respect to the remaining provisions of Paragraph 18. I believe that the panel was within its authority to award Paragraph 18 in its entirety, and I would thus reverse the Commonwealth Court's order in its entirety.

The majority briefly addresses the issue of whether the Commonwealth, or any other public employer, may skirt its statutory obligation to bargain with public employees by promulgating regulations regarding bargainable employment issues, use such regulations as sacrosanct "authority" to avoid bargaining on these issues, and thus compel a result in its favor on such issues. As the majority notes, long ago we determined that public employers can "**not** ... hide behind self-imposed legal restrictions." *City of Washington v. Police Department of City of Washington*, 436 Pa. 168, 259 A.2d 437, 442 (1969) (emphasis in original). Here, the majority concludes that because the serious issue of the Commonwealth hiding behind its Chapter 39 regulations was only addressed

infringed upon managerial prerogatives. Section 702 of PERA, 43 P.S. § 1101.702, does provide that items of inherent managerial policy are not bargainable. However, the provision applicable in this case— Section 805 of PERA, which applies to unique populations of public employees that are closely akin to Act 111 employees—relevantly provides that "[n]otwithstanding **any other provision of this act** ... [the decision of] the panel of arbitrators ... shall be final and binding...." 43 P.S. § 1101.805 (emphasis added). Section 805 thus eschews Section 702, and I take this circumstance as further evidence that *City of Philadelphia* and *Borough of Ellwood City,* albeit both Act 111 cases, came to erroneous conclusions on the issue of the primacy of managerial prerogatives or responsibilities.

in the parties' briefs in a minor fashion, if at all, we "leave its ultimate determination for a future case or cases." Op. at 552, 12 A.3d at 365.

I see no need to leave this issue for another day. Indeed, I believe the resolution of this issue is necessary for the proper disposition of the question this Court certified for appeal.

As the majority correctly determined, any judicial review of the "final and binding" arbitration award in this case would fall under the third prong of narrow *certiorari*, concerning the limits of the power or authority of the arbitration panel. With respect to the third prong of narrow *certiorari*, we have held:

> Our definition of what constitutes an excess of an arbitrator's powers is far from expansive. Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority.

*FOP, Lodge No. 5, supra* at 296–97, 768 A.2d 291 (citations and quotation marks omitted). "This third prong does not provide a portal to unlimited review of an Act 111 arbitration award." *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 595 Pa. 47, 938 A.2d 225, 230 (2007). Further, we have interpreted this third prong of narrow *certiorari* as ensuring that an arbitration award "may only require a public employer to do that which the employer could do voluntarily." *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n ("Betancourt")*, 540 Pa. 66, 656 A.2d 83, 90 (1995); *Fort Pitt Lodge No. 1, supra* at 230.

It is critical to recognize in this case that the Commonwealth agencies are not prohibited by any legislative act from complying with Paragraph 18 of the award. The Chapter 39 regulations, which the majority here determines limit the authority of the arbitration panel, are **not** compelled by any statute. These regulations are purely the product of the executive arm of the Commonwealth. Accordingly, that executive arm **can** voluntarily comply with Paragraph 18 by simply altering its regulations, which it may freely do without fear of

violating any act of the legislature. Otherwise, the Commonwealth here simply hides behind its own self-imposed limitations. I thus strongly disagree with the majority that the arbitration award in this case compels the Commonwealth to perform an illegal act. Therefore, the Chapter 39 regulations do not preclude the implementation of Paragraph 18 of the arbitration award in any respect under the narrow *certiorari* scope of review.

I believe that the circumstance presented in this case is exactly the circumstance contemplated by this Court in *City of Washington*, where we determined that public employers can "**not** ... hide behind self-imposed legal restrictions." *Id.* at 555, 12 A.3d at 442 (emphasis in original). The matters addressed in Paragraph 18 of the award are bargainable terms and conditions of employment. The award is final and binding pursuant to Section 805 of PERA. Accordingly, the Commonwealth Court's invalidation of Paragraph 18 is not in accordance with Section 805. For this reason, I would reverse the Commonwealth Court's order in its entirety.[2]

2. Finally, I must respectfully disassociate myself from the majority's observation, in the last sentence of Section IV, that the majority's invalidation of the significant part of Paragraph 18 of the award is "not untoward." Op. at 552–53, 12 A.3d at 365. The overarching question here is whether any court, including this one, may review the final and binding arbitration award in the first instance. Any judicial review is permissible only under the highly circumscribed narrow *certiorari* scope of review. That scope of review is confined to four selectively narrow considerations. Whether a judicial correction of an arbitration award is "untoward" or "not untoward" is not one of them.