# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,      :
           Petitioner      :
           :   No. 156 C.D. 2024
         v.      :
           :   Submitted: March 4, 2025
Pennsylvania State Troopers'      :
Association,      :
           Respondent      :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                         **FILED: March 28, 2025**

Pennsylvania State Police (PSP) has petitioned this Court to review an arbitration decision in favor of the Pennsylvania State Troopers' Association (Association). On appeal, PSP contends the arbitrator improperly altered the issue and revised the parties' collective bargaining agreement (CBA). Constrained by our narrow scope of review, we reluctantly affirm.

## I. BACKGROUND[1]

PSP employed Jeffrey Tihey, a diabetic, who monitors his condition using his phone. Tihey interdicts illegal drugs, which involves working outside of uniform, at odd hours, and driving a state-owned, unmarked car. On September 30, 2021, Tihey was assigned to work the noon to 8 p.m. shift, although he only worked that morning and used "comp time" for the rest of the day.[2] He did not eat anything

---

[1] Unless otherwise stated, we state the background based on the arbitrator's decision as "little dispute about the events" exists. _See_ Arb. Op., 2/5/24, at 2.

[2] Apparently, because every trooper assigned to the drug interdiction unit works

that day or take any insulin. Late that afternoon, Tihey drove to a hotel, where he recalled having some drinks at the bar and realized he misplaced his phone. After unsuccessfully searching around the hotel, Tihey decided to drive to his home, which was nearby.[3]

As he left the hotel in his unmarked car, he crashed into a parked vehicle. The police arrested Tihey on suspicion of driving under the influence, and his blood alcohol level was .24%. Tihey was charged with driving under the influence (DUI), he successfully requested accelerated rehabilitative disposition (ARD), and the court ordered probation.

PSP began its investigation and interviewed Tihey. At the interview, Tihey admitted he was driving a state-owned car, arrested for DUI, accepted into ARD, and received probation. Tihey noted that he had misplaced his phone and could not monitor his diabetes. PSP discussed Tihey's diabetes but did not contact his doctor or request his medical records. As a result of PSP's investigation, PSP recommended that Tihey be terminated for violating appendix D, § 9(c) of the CBA (DUI clause).[4]

At the arbitration hearing, Tihey argued that PSP needed to prove "just cause for an appendix D violation . . . that would necessitate termination." N.T. at 12-13. In his view, PSP was required to prove that Tihey knew he was intoxicated, drove a state-owned vehicle, and intended to drive while intoxicated. In support of

"unconventional hours," as a matter of custom, the entire drug interdiction unit is assigned the noon to 8 p.m. shift, notwithstanding the actual work hours. PSP Ex. 1; Notes of Testimony (N.T.), 12/14/23, at 174. Although not reflected at the arbitration hearing, Tihey stated that he had worked at least 10 days straight prior to September 30, 2021. PSP Ex. 1.

[3] Tihey was temporarily staying at a hotel due to marital issues. N.T. at 175-76.

[4] We discuss the CBA in further detail below. PSP also found that Tihey violated several PSP regulations, such as excessive drinking while off duty and conduct unbecoming an officer. Those violations are not at issue.

2

his lack of intent, Tihey presented, *inter alia*, evidence of extremely low blood sugar readings for the day of the accident and the testimony of Dr. Vincent Trapanotto, Tihey's primary care physician.[5] In relevant part, Dr. Trapanotto testified that a person with low blood sugar would exhibit symptoms of confusion and appear intoxicated. *Id.* at 140-41, 147-48. A person suffering from low blood sugar would be unable to regulate insulin and would require outside assistance. *Id.* at 140-41.[6]

At the hearing, PSP agreed with Tihey that it had to prove intent. *Id.* at 129-30 (reflecting agreement with counsel's questions that PSP examines the grievant's intent in resolving discipline). For example, PSP would consider the grievant's intent to distinguish, for disciplinary purposes, between a negligent or intentional discharge of a firearm. *Id.* at 130.

The arbitrator found for Tihey, reasoning that PSP needed to establish that Tihey intended to commit DUI. Arb. Op. at 9. Because PSP had the burden, the arbitrator stated that PSP should have contacted Tihey's doctor. Per the arbitrator, PSP should have investigated Tihey's diabetes to definitively resolve whether Tihey intentionally committed DUI. *Id.* at 10-11 (reasoning that PSP had the "onus . . . to confirm that [Tihey] had the intent to act as he did, in violation of" the DUI clause). PSP's insufficient investigation, the arbitrator reasoned, meant PSP acted improperly in concluding Tihey violated the DUI clause. In support, the arbitrator rejected PSP's reliance on a prior arbitration decision. *Id.* at 11 (distinguishing *Pa. State Troopers Ass'n v. Pa. State Police* (No. 18-DS 198, filed Jan. 24, 2019) (De Treux, Arb.) (*Venango*)).

---

[5] Tihey had presented such evidence to PSP as part of its internal investigation. PSP, in turn, introduced its investigation as an arbitration exhibit. PSP Ex. 1.

[6] Dr. Trapanotto did not address the relationship, if any, of low blood sugar with blood alcohol concentration. We infer that Tihey argued that because of the side effects of low blood sugar, he lacked the intent to drive home. *See* PSP Ex. 1.

The arbitrator held that Tihey's "termination was without just cause and must be rescinded." *Id.* A few sentences later, the arbitrator's mandate stated that PSP "did not have just cause to charge" Tihey with violating the DUI clause. *Id.* The arbitrator noted that because Tihey violated several PSP regulations that "were not the subject of this grievance," PSP should discipline Tihey accordingly. *Id.* at 11-12.

PSP timely appealed to this Court.

## II. ISSUE

PSP raises two overlapping issues. First, PSP contends that the arbitrator improperly reformed the CBA by examining whether PSP had just cause to charge Tihey with violating the DUI clause. PSP's Br. at 4, 16. Second, PSP asserts that the arbitrator also reformed the CBA by imposing a lesser penalty than termination. *Id.* at 4, 18.

## III. DISCUSSION[7]

Before summarizing the parties' arguments, we discuss the CBA. The

[7] Our scope of review of arbitration decisions involving police officers is limited. *See* Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12 (Act 111). *Contra* Section 7 of Act 111, 43 P.S. § 217.7(a) (stating no appeal allowed). "Scope of review refers to the confines within which an appellate court must conduct its examination." *Pa. State Police v. Pa. State Troopers' Ass'n*, 656 A.2d 83, 85 n.4 (Pa. 1995) (*Betancourt*) (cleaned up). This Court's scope of review of an Act 111 arbitration award is limited to four issues: "(1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.* at 85; *accord N. Berks Reg'l Police Comm'n v. Berks Cnty. Fraternal Ord. of Police, Lodge #71*, 230 A.3d 1022, 1027 (Pa. 2020) (*Berks*); *see also City of Phila. v. Fraternal Ord. of Police, Lodge No. 5*, 326 A.3d 87 (Pa. 2024) (*per curiam* order) (granting allocatur on the issue of whether to revise the *Betancourt* scope of review). We do not defer to the arbitrator's holding on whether any of the four issues, *e.g.*, jurisdiction, exists, and thus, apply a plenary standard of review. *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 1001 (Pa. 2006) (*McCandless*); *Berks*, 230 A.3d at 1027 ("A plenary standard of review governs the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari, thus allowing for non-deferential review." (cleaned up)).

CBA provides that in disciplinary matters, "the arbitrator shall be limited to determining just cause and may not alter the penalty imposed by the Department." CBA at art. 28, § 7. Per the CBA, an officer "should be subject to disciplinary action only for 'just cause.'" CBA, at app. D. The CBA defines certain "standards" that govern "just cause." *See generally id.* "The following standards shall govern the elements of 'just cause' for the misconduct described below and these standards shall constitute a 'clean slate' relating to the twelve terminable offenses described below in that they shall supersede and replace all prior standards, agreements, past practices, and arbitration awards on the same subjects." CBA, at app. D. One of the 12 terminable offenses is ARD for DUI "while operating a state-owned vehicle." *Id.* (cleaned up).[8]

### A. Parties' Arguments

We summarize PSP's interrelated arguments together. In support of its first issue, PSP argues that the arbitrator sidestepped the issue of whether just cause

---

[8] Appendix D states, in relevant part, as follows:

Members should be subject to disciplinary action only for "just cause." The following standards shall govern the elements of "just cause" for the misconduct described below and these standards shall constitute a "clean slate" relating to the twelve terminable offenses described below in that they shall supersede and replace all prior standards, agreements, past practices, and arbitration awards on the same subjects.

Certain conduct immediately and absolutely threatens the integrity of the Department's public duty and responsibility. In the following circumstances, the proper level of discipline is termination of employment, notwithstanding any mitigating circumstances. Such conduct includes . . . .

[3] Any use of a firearm to threaten another except as appropriate in the scope of employment . . .

[9] "Driving under the influence" pleas, convictions or ARD under one of the following circumstances: . . . (c) While operating a state-owned vehicle.

CBA, at app. D.

existed to terminate Tihey by examining whether PSP had just cause to charge Tihey with violating the DUI clause. PSP's Br. at 16. In sidestepping the issue, PSP claims the arbitrator necessarily had to reform the CBA, and thus, PSP requests we reverse. *Id.* at 17.

Second, PSP similarly argues that the arbitrator improperly reformed the CBA to "implement a penalty that she deemed more suitable," *i.e.*, a lesser penalty than termination. *Id.* at 18. In support, PSP asserts that the arbitrator's factfinding was limited to deciding whether PSP presented sufficient evidence that Tihey accepted ARD for DUI and was driving a state-owned vehicle. *Id.* Despite agreeing that both facts exist, in PSP's view, the arbitrator reformed the CBA by defining "just cause" to require intent. *Id.* at 19 (asserting the arbitrator erred by manufacturing "a standard requiring a determination of whether . . . Tihey had the intent to commit" the offense). Appendix D, however, does not have any intent element per PSP. *Id.* Instead, PSP maintains, the arbitrator was bound by *Venango*, which we discuss below. *Id.* at 20-22. In sum, per PSP, the arbitrator was required to affirm PSP's decision to discharge Tihey after finding that he had accepted ARD. *Id.* at 22.

The Association retorts that PSP is raising an issue outside of this Court's narrow scope of review. Ass'n's Br. at 2, 22. The Association interprets PSP's argument to mean that the arbitrator "was required to stop her inquiry" upon finding that Tihey accepted ARD while in a state-owned vehicle. *Id.* at 20, 23. The Association rejects this interpretation, asserting that the arbitrator was permitted to interpret the CBA to require PSP to prove intent to establish just cause to terminate Tihey. *Id.* at 23, 26 (contending that because the CBA does not define "just cause," the arbitrator was permitted to define the term). The Association notes that the

6

arbitrator properly relied on PSP's testimony "that intent was required." *Id.* at 26. Further, the arbitrator was also permitted to render findings of fact as to whether Tihey intentionally engaged "in the acts alleged." *Id.* at 24. Neither the arbitrator's interpretation of the CBA nor the arbitrator's findings of fact, the Association argues, can be reviewed by this Court, even if the arbitrator was incorrect. *Id.* at 22-23, 25.[9]

## B. An Arbitrator's Powers

Our Supreme Court defines "what constitutes an excess of an arbitrator's power" narrowly. *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 12 A.3d 346, 361 (Pa. 2011) (*Corr.*) (cleaned up). "Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority." *Id.* (cleaned up). Conversely, an arbitrator exceeds its authority by requiring "an employer to take actions that it cannot perform voluntarily, that is, to perform illegal acts," or resolving issues outside of the terms and conditions of employment. *Id.* at 366; *City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No.1*, 224 A.3d 702, 714 (Pa. 2020) (*Fort Pitt*); *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1 (Dailey)*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 415 C.D. 2024, filed March 17, 2025), 2025 WL 826274, *11; *City of Scranton v. E. B. Jermyn Lodge No. 2 of Fraternal Ord. of Police*, 903 A.2d 129, 135 (Pa. Cmwlth. 2006) (*en banc*) ("[A]n arbitrator only exceeds his power if he mandates that an illegal act be carried out or requires a public employer to do that which the employer could not do voluntarily." (citations omitted)).[10]

---

[9] The Association discusses a case that is not in the record or readily available online. *See* Ass'n's Br. at 27-28 (summarizing *Pa. State Police v. Pa. State Troopers Ass'n (Finkbiner)* (No. 11-DD-471/L-203 2011) (McNeill, Arb.)). *See* Pa.R.A.P. 126(a) (instructing parties to attach "not readily available" authorities as appendices to their briefs).

[10] In *Fort Pitt*, our Supreme Court addressed whether the arbitrator improperly reformed

"[A]n arbitrator's legal errors in the interpretation of the labor agreement fall *outside* the scope of appropriate judicial review in the Act 111 context." *Fort Pitt*, 224 A.3d at 714 & n.10 (emphasis added) (reversing this Court and holding that "the arbitrator's legal reasoning, however flawed, demonstrates sufficient interpretative focus"); *Pa. State Police v. Pa. State Troopers Ass'n*, 741 A.2d 1248, 1252 (Pa. 1999) (*Smith*) (stressing that an arbitrator's "error of law [is] insufficient to support a court's decision to reverse an" Act 111 decision). It is insufficient because judicial review of an arbitrator's error of law means the arbitrator's decision is never final. *Cnty. of Centre v. Musser*, 548 A.2d 1194, 1199 (Pa. 1988) (discussing *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) (*Wheel*)).[11] Relatedly, "courts have resisted attempts to review

the CBA. The facts are somewhat complex, but the essence of the issue before the arbitrator was whether police officers were required to work on their days off under the CBA. *Fort Pitt*, 224 A.3d at 703-04. The arbitrator ruled in the officers' favor, but its reasoning was legally inconsistent. *Id.* at 706-07. Pittsburgh appealed to the court of common pleas, which reversed, reasoning that nothing within the CBA justified the arbitrator's decision. *Id.* at 707 (criticizing the arbitrator for cherry-picking clauses to create a remedy, *i.e.*, reforming the contract). This Court affirmed, explaining that although an arbitrator's errors of law are unreviewable, an arbitrator cannot equitably reform a CBA. *Id.* at 708.

Our Supreme Court reversed: this Court had erred by reviewing the arbitrator's interpretation of the CBA's terms and conditions of employment, *even if* blatantly incorrect. *Id.* at 713-14. The *Fort Pitt* Court observed that it had explicitly "rejected an argument that an arbitrator misinterpreted the . . . collective bargaining agreement. . . . Such an argument is not cognizable within the confines of the narrow *certiorari* scope of review's definition of an excess of the arbitrator's powers as it is, in effect, an argument that the arbitrator erred as a matter of law." *Id.* at 713 (cleaned up). The Court stated that "absent an indisputably overt instance of reformation, however, . . . the task of distinguishing between such an innovation and errors of law in the interpretation [is] unmanageable." *Id.* at 714 (citation omitted); *accord Dailey*, ___ A.3d at ___, 2025 WL 826274, at *13.

[11] In *Wheel*, the employer had argued that "by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide [for the remedy], and that therefore the arbitrator's decision was not based upon the contract." *Wheel*, 363 U.S. at 598. Accepting the employer's argument, the High Court reasoned, "would require courts . . . to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's

8

Act 111 arbitration awards that mitigate discipline as an excess of authority." *City of Phila. v. Fraternal Ord. of Police, Lodge #5* (Pa. Cmwlth., No. 1243 C.D. 2021, filed June 28, 2023), 2023 WL 4229351, at *7 (*McGorry*) (collecting cases).[12] Accordingly, we "are bound . . . by all determinations of fact and issues of law" outside of the narrow scope of review, "even if incorrect." *City of Phila. v. Fraternal Ord. of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1266 (Pa. 2009).[13]

Most recently, this Court resolved an Act 111 claim that the arbitrator exceeded its power by improperly construing "just cause" in the CBA. *Dailey*, ___ A.3d at ___, 2025 WL 826274, at *10. In *Dailey*, the officer allegedly disobeyed an order to attend a funeral to deter gang retaliation. Unfortunately, at the funeral, two gunmen shot and wounded five people. The department suspended the officer, and the matter proceeded to the arbitrators, which essentially found in the officer's favor. The department appealed, arguing that "the arbitrators exceeded their jurisdiction and powers by ignoring the parties' agreed-upon standard for just cause in the CBA." *Id.* at ___, 2025 WL 826274, at *4, 10.

In *Dailey*, the CBA incorporated the Policemen's Civil Service Act (PCSA), Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. §§ 23531-23540, which provided that an officer could not be disciplined except for "just cause which

---

decision is final, for in reality it would almost never be final." *Id.* at 598-99. The "question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 599.

[12] We may cite to unreported opinions for their persuasive authority. *See* Pa.R.A.P. 126(b).

[13] For example, in *Berks*, the arbitrator resolved whether the police department had just cause to terminate the officer under the CBA. *Berks*, 230 A.3d at 1033. The arbitrator reinstated the officer, and the trial court vacated, reasoning that reinstatement was an illegal act. *Id.* at 1024. This Court vacated the trial court on other grounds, and our Supreme Court reversed. *Id.* at 1024, 1030-31. The *Berks* Court held that we failed to limit ourselves to the narrow issue of whether the arbitrator exceeded its powers by reinstating the officer. *Id.* at 1037-38.

9

shall not be religious or political." Section 4 of the PCSA, 53 P.S. § 23539.1(a). Neither the CBA nor the PCSA defined "just cause." *Dailey*, ___ A.3d at ___, 2025 WL 826274, at *10. This Court reiterated that when "a governmental employee has been discharged for 'just cause' and that term is undefined in the [CBA], the arbitrator has the authority to interpret the terms of the agreement, including the undefined term 'just cause' and to determine whether there was just cause for the discipline imposed." *Id.* at ___, 2025 WL 826274, at *11 (cleaned up and quoting *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 923 A.2d 1212, 1217 (Pa. Cmwlth. 2007) (*Karpinsky*)). Because "just cause" was undefined, the *Dailey* Court held that the arbitrators could resolve whether "just cause" existed for the officer's suspension based on the record. *Id.*[14] The *Dailey* Court also rejected the department's claim that the arbitrators exceeded their authority by reducing the officer's discipline. *Id.* We reasoned that an arbitrator only exceeds its authority by mandating an illegal act or resolving issues outside of the terms and conditions of employment. *Id.*; *accord Corr.*, 12 A.3d at 361, 366; *Fort Pitt*, 224 A.3d at 714.

Similarly, in *Smith*, an arbitrator reinstated a state trooper who "was fired after committing illegal conduct, including driving while intoxicated and placing a loaded gun into a victim's mouth while threatening to kill her." *Corr.*, 12 A.3d at 361 (discussing *Smith*). PSP appealed to this Court, reasoning that the arbitrator exceeded its power because its reinstatement of the trooper violated public policy. *Smith*, 741 A.2d at 1252. Our Supreme Court rejected PSP's reasoning as courts cannot interfere "with an arbitrator's determination merely because it is unpalatable, or even extremely distasteful." *Corr.*, 12 A.3d at 361 (cleaned up).

---

[14] The *Dailey* Court observed that we have previously defined "just cause" in the civil service context as "personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service." *Dailey*, ___ A.3d at ___, 2025 WL 826274, at *10 n.15 (cleaned up).

In a non-Act 111 case, our Supreme Court addressed whether the arbitrator properly held the government employer had just cause to terminate a state employee for driving a state vehicle while off-duty and drinking alcohol. *Off. of Att'y Gen. v. Council 13, Am. Fed'n of State, Cnty. Mun. Emps., AFL-CIO*, 844 A.2d 1217, 1219-20 (Pa. 2004) (*Council*). The CBA did not define "just cause." *Id.* at 1224. Based on extenuating circumstances, the arbitrator "found that just cause was lacking for termination . . . ." *Id.* at 1220. The employer appealed to this Court, which reversed, reasoning that because the arbitrator found the employee acted improperly, the employer had just cause. *Id.* Our Supreme Court reversed this Court. *Id.* at 1227. Because the parties did not define "just cause," our Supreme Court held that the arbitrator could define the term and resolve whether just cause existed. *Id.* at 1224.

### C. Arbitrator Did Not Exceed Her Powers

Instantly, PSP asserts that the arbitrator improperly modified the issue before her by examining whether PSP had "just cause" to charge Tihey as opposed to whether PSP had "just cause" to terminate Tihey. PSP's assertion is grounded in the arbitrator's statement that Tihey's "termination was without just cause and must be rescinded" and subsequent statement that PSP "did not have just cause to charge" Tihey with violating the DUI clause. Arb. Op. at 11. Given that the arbitrator's statements were just a few sentences apart, we acknowledge that the arbitrator's verbiage might have been unartful. Nevertheless, PSP's assertion presumes that appendix D contains clauses limiting "just cause" to termination as opposed to charging. But appendix D does not: "Members should be subject to disciplinary action only for 'just cause.'" CBA, at app. D. As we discuss below, the arbitrator addressed the fundamental issue of whether PSP had "just cause" to "subject" Tihey

11

to disciplinary action.[15]

In that regard, the arbitrator interpreted the term "just cause" in appendix D as requiring intent. Regardless of whether (1) "just cause" was undefined and the arbitrator defined the term; or (2) "just cause" was defined and the arbitrator misinterpreted the definition, both issues lie outside of our narrow scope of review. With respect to the former, like the arbitrators in *Dailey* and *Karpinsky*, which defined the undefined term "just cause" under the CBA, the instant arbitrator was also empowered to define the term. *See Dailey*, ___ A.3d at ___, 2025 WL 826274, at *11; *Karpinsky*, 923 A.2d at 1217. *Cf. Council*, 844 A.2d at 1224 (reversing this Court and holding that the arbitrator properly defined the undefined term "just cause" in reversing an employee's termination for driving after drinking alcohol).[16]

As for the latter, even if the arbitrator misinterpreted the term "just cause" as set forth in appendix D, it is long settled that courts cannot reverse an arbitrator's flawed legal reasoning in construing a CBA, even if blatantly incorrect. *See, e.g.*, *Fort Pitt*, 224 A.3d at 714 & n.10; *Smith*, 741 A.2d at 1252; *Wheel*, 363 U.S. at 598-99; *see also Council*, 844 A.2d at 1224. Judicial review of the arbitrator's interpretation of "just cause" in appendix D as requiring the element of intent is "not cognizable" as a claim that the arbitrator exceeded her powers. *See, e.g.*, *Fort Pitt*, 224 A.3d at 713-14. It is not cognizable because of the near impossibility of distinguishing between whether an arbitrator (1) rendered a sufficient—yet flawed—interpretation of the CBA, or (2) reformed the CBA. *Id.* at 714.

---

[15] We note that the term "disciplinary action" apparently could be interpreted as encompassing all stages of the disciplinary process, from its initiation (charging) to penalty (termination). *See* CBA, at app. D ("Members should be subject to disciplinary action only for 'just cause.'"). Of course, we are barred from interpreting the CBA.

[16] *See also* N.T. at 129-30 (reflecting PSP's admission that it evaluates a trooper's intent in resolving discipline involving, *e.g.*, a negligent or intentional discharge of a firearm). To the extent such a discharge implicates discipline under appendix D, intent may be relevant. *See id.*

Relatedly, to the extent that the arbitrator's decision could be construed as imposing a lesser penalty, courts have been reluctant "to review Act 111 arbitration awards that mitigate discipline as an excess of authority." *See McGorry*, 2023 WL 4229351, at *7; *Smith*, 741 A.2d at 1252 (agreeing with this Court's affirmance of an arbitrator's decision to reinstate a trooper who was terminated for, *inter alia*, DUI). Here, the arbitrator mitigated Tihey's termination, which does not invite judicial review. *See, e.g.*, *McGorry*, 2023 WL 4229351, at *7; *Smith*, 741 A.2d at 1252.

Finally, to the degree that PSP contends the arbitrator disregarded *Venango*, PSP cites no authority for the proposition that the instant arbitrator was bound by that decision. *See generally* PSP's Br.[17] In any event, *Venango* is distinguishable from the case at bar. In *Venango*, the trooper went drinking with his unit after work. *Venango*, slip op. at 1. While driving home in his unmarked state vehicle, he crashed into another vehicle and was arrested for DUI. *Id.* at 1-2. PSP terminated him for violating the DUI clause, and the parties went to arbitration. *Id.* at 2. The arbitrator affirmed, concisely reasoning that the trooper's evidence of good character and performance was not a basis to set aside the termination. *Id.* Nothing in the arbitrator's sparse decision addressed intent or reflected facts present in the instant case, *i.e.*, diabetes. *See generally id.*

But even if *Venango* was somehow persuasive or binding authority on the arbitrator, we cannot disturb an arbitrator's legal interpretation of *Venango* or the CBA, even if erroneous. *See Breary*, 985 A.2d at 1266 (holding that errors of law outside of our narrow scope of review are unreviewable); *Fort Pitt*, 224 A.3d at 713-

---

[17] We cannot act as an advocate for the parties. Nevertheless, we are aware that "although prior arbitration awards do not have the precedential value of judicial decisions, when the prior decision involves the interpretation of the identical contract provision(s) between the same parties, stability in collective bargaining relations requires acceptance by an arbitrator of the previous interpretation." *Sch. Dist. of Phila. v. Phila. Fed'n of Teachers*, 651 A.2d 1152, 1156 (Pa. 1994) (citation omitted).

13

14 (same). Accordingly, because the arbitrator (1) did not order PSP to take an illegal action, and (2) rendered a decision relating to Tihey's terms and conditions of employment, the arbitrator did not exceed her powers. *See Corr.*, 12 A.3d at 361, 366; *Berks*, 230 A.3d at 1037-38.

## IV. CONCLUSION

For these reasons, we affirm the arbitration decision in favor of the Association.

_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Pennsylvania State Police, | : |
| Petitioner | : |
| | :   No. 156 C.D. 2024 |
| v. | : |
| | : |
| Pennsylvania State Troopers' | : |
| Association, | : |
| Respondent | : |

## **O R D E R**

AND NOW, this 28th day of March, 2025, we AFFIRM the arbitrator's February 5, 2024 award adverse to Pennsylvania State Police.

_____
**LORI A. DUMAS, Judge**